# L. JUDSON and A. H. LOVE v. GRACE BENNETT and LILLIAN DENT, Appellants.

## Division One, March 31, 1911.

1. ADMINISTRATION: Payment of Demands Before Allowance. The heirs are not entitled to have the executors charged in their final settlement with legal demands against the estate paid by them without presentation to and allowance by the probate court. If the demand is a legal one, the heirs cannot complain that it was paid by the executors without being probated. If the demand is not a legal one and the executors pay it without an order of court, they do so at the risk of being subsequently required to restore the money to the estate; and even if it is a legal demand, creditors may complain that its payment, without an order of court, amounts to a wrongful classification. But where the demand is a legal one and the personal estate exceeds the debts, no one is injured by the payment by the executors without waiting for an order of court, and they cannot be made to refund it.

2. ———: Executor Also Trustee: Commissions. The same person may act under a will in the dual capacity of executor for administering the estate and trustee for holding it for uses. But he is not entitled to double commission for some services performed in one capacity and others performed in the other during the same period; and where he has qualified only as executor, and has never been discharged as such, and has never been appointed trustee, he cannot claim commissions for his services as trustee, although after a year or two the services performed by him are those pertaining to the duties of a trustee. Such an executor cannot have five per cent for administering the estate, and in addition an annual salary for ten years for renting the property, lending its moneys, collecting dividends and interest, and otherwise handling the estate, and distributing the net income among the devisees. Nor can he, if he qualified only as executor, forego his fees of five per cent allowed executors, and charge an annual salary as trustee.

3. ———: ———: ———: Made Trustee by Will. The will gave to the widow the home farm, furniture and stock, and directed his executors to take charge of the remainder of the estate, which was very large, collect the accounts, keep the money loaned out, collect the rents and dividends, and keep the estate intact for ten years, and during that time pay one-eighth of the income to his widow and one-eighth to each of his children, and at the end of that time divide the principal

among them in the same proportions. It directed the executors to file in the probate court a complete inventory of the estate, and "at the end of each year thereafter file a report in said court of all moneys received and all moneys paid out, to whom loaned and how invested, so that such report may be a complete showing of the condition of the estate at that time." The executors qualified as such, and, the ten years having expired, in their final settlement ask that the estate be distributed among the legatees, and that they be allowed compensation as trustees. *Held*, that they were not trustees, and they are to be compensated for their services as executors by an allowance of the five per cent prescribed by the statute, and cannot be allowed an annual salary for managing the estate as if they were trustees.

4. ————: **Funeral Expenses of Devisee.** Where the will made no provision for the payment of the funeral expenses of the widow, who was also a devisee, the executors upon her death cannot pay such expenses out of the assets of the estate, and if so paid, they should be charged back against her distributive share.

5. ————: **Subscription to Railroad.** The executors should be charged with estate money paid by them to a railroad company for the purpose of assisting it to rebuild a portion of its track washed out by an extraordinary flood, where the will makes no provision for such a payment.

6. ————: **Bank Stock: Commissions.** The court should allow executors five per cent on bank stock, belonging to the estate, inventoried by them and distributed among the devisees. Such commissions are authorized by the statute.

7. ————: **Interest: On Unloaned Money.** Where the executors did not mingle the funds of the estate with their own, did not use its money in their private business, and did not lose any of it, but deposited some of it in a bank, nearly one-half of whose stock belonged to the estate, which drew large dividends on the stock, a charge of seven and one-half per cent interest on all sums of money remaining in their hands after each annual statement, not subsequently loaned, down to the next annual settlement, was enough, and the court did not err in refusing to charge them with eight per cent on such moneys, or the highest rate the law permits, even if the money could have been loaned at eight per cent.

8. ————: **Misconduct: Commissions.** Where the personal estate was valued at $70,000, and under the management of the executors at the end of ten or twelve years had increased to $145,000, less distributed dividends, which amounted to nearly $20,000, and one of them had become wholly incapacitated and

was confined in a sanitarium, and another, who was the active, executor, had become so incapacitated as to lose his memory, yet none of the estate has ever been lost, they should not be charged with misconduct, and deprived of their commissions, but instead a mantle of charity and sympathy should be thrown about them.

9. ———: **Receiver: Estoppel: Power of Court to Appoint.** Where the executors had, because of mental infirmities, become incapacitated to manage the estate, those devisees who stipulated that a receiver should be appointed to proceed, in lieu of the executors, with the trial of the cause and to handle the remaining funds, will not be heard to question the power of the circuit court to appoint a receiver.

10. ———: ———: ———: **Compensation.** Nor will they be heard to question the compensation allowed him by the court, nor fees allowed his attorneys.

11. ———: ———: **Compensation and Also Commissions.** The legal effect of the appointment of a receiver, upon the executors becoming incapacitated, is to discharge the executors from further actual administration of the estate, and thereafter he, *de facto* at least, acts as administrator *de bonis non;* and the court having allowed him compensation for collecting and distributing such funds of the estate as were not then administered, should not also allow the executors commissions of five per cent for collecting and distributing the same moneys.

12. ———: **Incapacity of Executors: Procedure.** The regular procedure upon the executors becoming incapacitated, is not to have a receiver appointed, but to proceed under the statute to have their letters testamentary revoked by the probate court, and an administrator *de bonis non* with the will annexed appointed; and then the cause pending in the circuit court on appeal from an order disapproving the executors' final settlement, may be revived in the name of such administrator.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*Lamar & Lamar* and *A. J. Arthur* for appellants.

(1) In a proceeding of this kind, where exceptions are filed to the final settlement of an executor,

the proceedings on appeal are analogous to appeals in equity cases. The court will examine the whole record and review the findings of fact as well as the law. The questions presented will be reviewed by the court as chancellors. In re Estate of Meeker, 45 Mo. App. 195; In re Estate of Danfurth, 66 Mo. App. 586. On final settlement in the probate court, or on appeal therefrom, annual settlements are mere exhibits of the condition of the estate, filed by the executor for the information of interested parties, as well as the probate court, and are not final or conclusive, but will be reviewed on final settlement. In re Davis, 62 Mo. 451; Williams v. Pettigrew, 62 Mo. 460; Richey v. Withers, 72 Mo. 556; Pichot v. O'Fallon, 35 Mo. 29. In the very nature of things no other rule could be applied, for the reason that annual settlements are made without notice and are entirely *ex parte,* and it has been held that an appeal will not lie from an allowance made at an annual settlement. North v. Priest, 81 Mo. 561; In re Hutton Estate, 92 Mo. App. 142. (2) The burden of proof in a final accounting rests upon the administrator or executor. If he fails or refuses to furnish evidence of the actual gains and profits, he invites a rule which shall give no advantage or profit to him by reason of his failure or neglect, and when the validity of any item is questioned on such final settlement, the burden rests upon the executor to prove such item. 18 Cyc. 1130-1134 (v), sec. 4; 2 Woerner's Amer. Law Adm. 1188, sec. 540; Cruce v. Cruce, 81 Mo. 685; Booker v. Armstrong, 93 Mo. 49. (3) Settlements filed by an executor are prima facie evidence against him. They are formal admissions made by him over his signature and under his oath. State ex rel. v. Richardson, 29 Mo. App. 595; State ex rel. v. Roeper, 82 Mo. 57. (4) No account was kept by the executor, or shown by his pretended settlements, of the actual amount of interest received by him, nor from whom received, nor when. These settlements do

show the amount loaned at each settlement, and he certainly should be charged with interest thereon. The law as well as the will, required him to keep this account, and to file annually an itemized list of these loans, and the interest collected thereon. If he failed or neglected to keep and furnish this, or kept his accounts in such manner that the accurate amount of the interest actually received could not be arrived at, he invites the rule which shall give him no benefit by reason of such failure. 11 Am. and Eng. Ency. Law, 1226-1227; 18 Cyc. 223 (g) 235 (4); 18 Cyc. 256. Where no account is rendered as to funds which should have been placed at interest, either as to their disposition or as to what was the actual amount received, the executor ought to be charged, as nearly as the sum can be ascertained, with all he might have made or received in the honest exercise of due diligence, periodical computation being made, less the proper deductions. 18 Cyc. 263; Cruce v. Cruce, 81 Mo. 676; In re Camp's Estate, 6 Mo. App. 563; Barney v. Saunders, 16 How. 535; Hook v. Payne, 14 Wall. 252; Bobb v. Bobb, 89 Mo. 412; State ex rel. v. Richardson, 29 Mo. App. 595; 28 Am. and Eng. Ency. Law (2 Ed.) 1080; Green v. Hussey, 96 Mo. App. 295; In re Ricker, 29 L. R. A. 661. Where the will directs the investment of funds the executor will be liable for simple interest at the legal rate if he does not invest. Frost v. Winston, 32 Mo. 489; Davis v. Williams, 62 Mo. 451; In re Estate of Danfurth, 66 Mo. App. 586. (5) The executors have failed to discharge their duties according to the terms of the will and the requirements of the law. Having kept no account of the receipts and disbursements of the estate, having failed to file settlements showing the condition of the estate, and by their neglect permitted the affairs of the estate to grow into almost inextricable confusion, they are not entitled to commissions. Commissions to an executor or administrator are incident alone to a faithful ad-

ministration of the estate; this means obedience to the law in such cases made and provided. The executors in this case have paid themselves and are withholding over $14,000 as compensation for that which they have not done. State ex rel. v. Taylor, 112 Mo. App. 585; Scudder v. Ames, 89 Mo. 522; State ex rel. v. Benning, 74 Mo. 100. Failure to keep an account of rents and profits during trusteeship, or conduct involving the estate in expensive litigation will forfeit all commissions. 28 Am. and Eng. Ency. Law (2 Ed.) 1038; Newton v. Rebeneck, 90 Mo. App. 650; 11 Am. and Eng. Ency. Law, 1197, 1282-1283; Merwin's Equity Pleading, 179, sec. 331. Compensation will be refused for failure to file proper inventory and accounts. 18 Cyc. 1164; 2 Woerner's Amer. Law Adm. 1160, sec. 524; Barney v. Saunders, 16 How. 535; Walker v. Beal, 9 Wall. 742; In re Ricker, 29 L. R. A. 657; Scudder v. Ames, 142 Mo. 210; Crenshaw v. Bentley, 31 Mo. App. 75; In re Estate of D. G. Tutt & Co., 41 Mo. App. 662; Watson v. Pearson, 121 Mo. App. 141; 11 Am. and Eng. Ency. Law (2 Ed.), 1287, sec. 2; Booker v. Armstrong, 93 Mo. 49. The executor could in no event claim or be entitled to commissions on sums not handled or disbursed by him. The executor is only allowed by statute five per cent commission on the amount disbursed. Garrison v. Trust Co., 77 Mo. App. 333; Springfield Grocery Co. v. Walton, 95 Mo. App. 536; Hawkins v. Cunningham, 67 Mo. 419; In re Settlement of Peters, 128 Mo. App. 672. At common law no compensation whatever was allowed administrators or executors, and the rule deduced by the courts in fixing their compensation where it has been allowed by statute is the same as that applied to the fees of public officers. Such compensation is purely statutory, in derogation of the common law, and must be strictly construed, and unless express authority for such compensation is found in the statute it will be denied. 18 Cyc. 1141; Watson v. Pearson, 121 Mo. App. 141;

Gregory v. Menefee, 83 Mo. 423; Booker v. Armstrong, 93 Mo. 56. The compensation of the executor or administrator is not a matter of grace in the discretion of the court having probate jurisdiction, but is fixed and regulated by statute. R. S. 1899, sec. 223; Garrison v. Trust Co., 77 Mo. App. 338; Hitchcock v. Mosier, 106 Mo. 582; Hawkins v. Cunningham, 67 Mo. 415; Roberts v. Hendrickson, 75 Mo. App. 484; Garesche v. Levering Inv. Co., 146 Mo. 443; Gamble v. Gibson, 59 Mo. 585. (6) Conceding that the executors had not forfeited all commissions, they were not in any event entitled to more than five per cent. They had treated themselves as executors and had kept the estate in the probate court during the whole time, and the court erred in refusing appellant's declaration of law number three, and in holding that the executors were also testamentary trustees, and as such entitled to commissions in the discretion of the court. 18 Cyc. 1160; Woerner's Am. Law Adm., secs. 529, 532; 11 Am. and Eng. Ency. Law (2 Ed.), 1139; note 5; Booker v. Armstrong, 93 Mo. 49; Gamble v. Gibson, 59 Mo. 585; Lincoln Trust Co. v. Tracy, 77 Mo. App. 96. Considering that the terms of the will imposed on the executors duties in addition to those imposed by law upon an ordinary executor or administrator, before they could claim compensation as trustees, they should have made final settlement in the probate court as executors at the end of two years, and taken the proper steps to transfer the property to themselves as trustees. Having taken charge of the estate as executors, they continued to hold it as such until transferred to themselves in some other capacity; and some unequivocal act is necessary on their part to change their relation. 11 Am. and Eng. Ency. Law (2 Ed.), 1139, note 5; Cruce v. Cruce, 81 Mo. 682; State ex rel. v. Branch, 112 Mo. 668; Lincoln Trust Co. v. Tracy, 77 Mo. App. 102; Tittman v. Green, 108 Mo. 23; State ex rel. v.

Branch, 134 Mo. 592; Francisco v. Wingfield, 161 Mo. 543.

*Wm. P. Elmer, J. B. Harrison* and *Gratia E. Woodside* for respondents.

(1)  (a)  The controlling rule in the construction of wills to which all technical rules of construction must give way, is to give effect to the true intention of the testator, as the same may be gathered from the whole instrument.  R. S. 1899, sec. 4650; McCune v. Goodwillie, 204 Mo. 337; Grave v. Perry, 197 Mo. 559. (b)  That the intention of the testator was to create a trust of which the named executors were to be trustees, is a deduction unquestionably authorized by the will itself, in this:  1. The testator created a trust which was to last for a period of ten years.  2. The testator placed the burdens and responsibilities of trustees upon his executors when he imposed upon them the personal duties of managing the estate and holding the same together for a period of ten years and paying out the income.  3. He made provision that in the event of mismanagement, the circuit court of Dent county, should take charge, remove the offending trustee and appoint another in his stead.  4. He did not require settlements to be made, but made provisions that the trustees should file annual reports in the probate court.  (c)  It is not necessary that the words "trust" or "trustee" or any equivalent word shall be employed, if there appears from the facts and circumstances of the case a clear intention to create a trust.  Ziedeman v. Molasky, 118 Mo. App. 119; In re Estate Soulard, 141 Mo. 662; 3 Redfield on Wills (2 Ed.) 467.  (d)  Where a trust is created by a will and no trustee is designated, the executor becomes the trustee and administers the trust as directed by the will.  As to such duties as the law directs an executor to perform he is deemed an executor, and as to such

duties other than the law places upon him, he is deemed to be a trustee. He occupies a double capacity. He is an executor proper for the ordinary administration of the estate and he is also a trustee for the administration of the trust fund, as directed by the testator. Marshall v. Meyers, 96 Mo. App. 648; Morrow v. Morrow, 113 Mo. App. 454. (e) When duties are imposed upon an executor of a will that have an aim further and beyond that of the settlement of the estate, such as when an estate otherwise ready for distribution to those in interest is required by the will to be held in the hands of the executor upon trusts which may extend over a long period, these duties are not executorial but personal in their nature, and this is true even though in directing him to execute such trust he is designated in the will as an executor, the court being guided in reaching its conclusions rather by the object sought to be obtained by the power, than by the name used to designate the one directed to execute it. Schlickman v. Bank, 129 S. W. 823. (f) The fact that the same persons who were named as executors were also named as trustees did not merge the trusteeship in the executorship. Th duties of one might remain to be performed after the other had been fully executed. West v. Bailey, 196 Mo. 521; Jacobs v. Hearst, 12 Mo. 366; Marshall v. Meyers, 96 Mo. App. 648. (2) The contention of appellants that the trustees should be charged with interest on the amount of personal property in their hands is without foundation in law or in fact. It has been repeatedly settled in this State that an executor should be charged interest on an amount in his hands only in the following circumstances: 1. Where he mingles the trust funds with his own, or uses it in his business; 2. Where it is shown that he has profited in any manner from the use of the trust funds; 3. Where he loans the trust estate at a certain interest and fails to account for interest actually received; 4. Where he appropriates any portion to his own use;

5. Where, unnecessarily, he delays greatly the final settlement and distribution of the estate. In re Danforth, 66 Mo. App. 590; Gregory v. Menefee, 83 Mo. 423; Pullis v. Summerville, 218 Mo. 637; Albert v. Sanford, 201 Mo. 134. (3) The contention of the appellants that the trustees be deprived of all commissions for the management of the Love estate, is without foundation. The settled rule of our courts is that, in order to deprive a trustee of compensation for his services he must have been guilty of such willful mismanagement or misconduct as resulted in a loss to the estate, or he must have mingled the funds with his own, used them in his business, or profited from their use. Ames v. Scudder, 11 Mo. App. 189, 83 Mo. 190; 18 Cyc. 1163; Clyce v. Anderson, 49 Mo. 44; State to use v. Berning, 74 Mo. 100; Garesche v. Levering Inv. Co., 146 Mo. 454; Ladd v. Piggott, 215 Mo. 361. (4) Partial or annual settlements or reports are prima facie evidence of the correctness of the accounts of the administration, and the burden of proof is upon those seeking to impeach them. 11 Am. and Eng. Ency. Law, 1310; Clark v. Sims, 144 Mo. 448; Myers v. Myers, 98 Mo. 262; North v. Priest, 81 Mo. 561.

WOODSON, J.—This appeal challenges the correctness of a judgment of the circuit court of Dent county, approving the final settlement of L. Judson et al., executors of the last will and testament of W. R. Love, deceased.

The latter departed this life in December, 1895, leaving surviving him his widow, Sarah P. Love, and the following children and grandchildren, to-wit: Elizabeth Hodges, D. S. Love (sometimes called Doll), A. H. Love (known as Andy), Mary Judson, Horace Love, and two children of Riley Love, a deceased son, to-wit, Lillian Love (now Dent) and Grace Love (now Bennett), and three children of Margaret Hill (*nee*

Love), a deceased daughter, to-wit, Lulu Stolzer, Clarence Hill and Charles Hill.

The estate of W. R. Love consisted of both real estate and personal property; the former consisted of improved farms and business houses in Salem, this State, worth from forty to fifty thousand dollars; and the latter was worth approximately seventy thousand dollars, consisting of bank stock, notes payable, thirty-five hundred dollars on deposit in the Bank of Salem, a small amount of cash on hand, some live stock, a lot of farm implements, and household and kitchen furniture.

Shortly prior to his death, W. R. Love made and executed his last will, by which he gave to his widow the home farm, located near Salem, on which they lived, and household goods, and "enough stock, horses, cattle, mules, and hogs to utilize the farm to the best advantage, also all the farm machinery, wagons, buggies, etc.," and directed that his executors take charge of the remainder of his estate, collect the accounts, keep all money loaned out except what might be necessary to pay for the estate's share of any increase in the capital stock of the Bank of Salem, and directed that the estate be kept together intact for ten years from January 1, 1896, and during that time to pay one-eighth of the income to his widow, and one-eighth to each of his living children, and one-eighth, in equal parts, to the descendants of each of those who were dead; and in case the widow died before the expiration of the ten years, her share to be divided among the others in the proportion fixed by law, and at the expiration of the said ten years, the whole estate should be divided, one-eighth to his widow, and one-eighth each to his living children, and one-eighth to the descendants of each deceased child *per stirpes.*

He directed that his mercantile business in the city of Salem be sold, and the profits, if any, be given to D. S. Love and Horace Love, and the money and

capital invested in said business turned back into his estate; that such personal property on the farm as the widow did not need should be sold, and in Clause 7 directed that his executors thereinafter named "should file in the probate court as soon as the sale of the property can be made, a complete inventory of my estate that may come into his or their hands, and at the end of each year thereafter file a report in said court of all moneys received and all moneys paid out, to whom loaned and how invested the estate in their hands, so that such report may be a complete showing of the condition of the estate at that time."

In the succeeding clause he directs that the executors "take charge of my estate, invest such portion of it in bank stock as they can under the above provisions, and loan out the balance with good and perfect security, collect all of the accounts possible and manage the estate for a period of ten years from and after January first, 1896."

L. Judson, D. S. Love and W. A. Young were named as executors. After the death of the testator, the will was duly admitted to probate, and D. S. Love and L. Judson gave bond and duly qualified as executors thereunder, but W. A. Young refused to accept or qualify, and A. H. Love was appointed in his stead by the probate court, and he gave bond and duly qualified as administrator *cum testamento annexo*.

After the first year or so neither A. H., Horace Love or D. S. Love took any active part in the administration or management of the estate, but left the matter entirely in the hands of L. Judson, who took charge thereof, receiving the rents from the properties and the dividends from the bank stock, and all other income paid to the estate from all sources, and paid out all moneys expended, and made out and filed in the probate court such papers and settlements as were filed concerning th estate.

The evidence shows that A. H. Love was at last incapacitated for business, and was at the time of the trial in a sanitarium in St. Louis for treatment. Mr. Elmer, the attorney for L. Judson, the executor, testified that the mind of L. Judson began failing some two years prior to the trial and grew steadily worse, until at the date of the trial he was wholly incapacitated for business; that his memory had failed and that he could not recollect events of importance to himself from one day to another; that he did not even know when his own case was being tried after he left the court room, and that he could not reason about anything.

The circuit court made the following findings of facts and declarations of law.

"W. R. Love died about the last of December, 1895, leaving a last will and testament in which he named L. Judson, D. S. Love and W. A. Young as executors. It seems that W. A. Young declined to act and by some means A. H. Love was substituted in his place.

"W. R. Love left a widow, Sarah P. Love, and children living at the time—D. S. Love, one of the named executors; A. H. Love, the substituted executor; Mary A. Judson, wife of L. Judson, the other executor; Elizabeth Hodges, Horace Love, and also grandchildren, to-wit: Children of Riley Love, two—now Grace Bennett and Lillian Dent; and children of Margaret Hill, three, to-wit: (1) Charley Hill, now living; (2) Clarence Hill, who has since died, leaving three heirs, W. R. L. Hill, Conie Hill and Isola Hill; (3) Lulu Hill, who married Philip Stolzer and has since died, leaving two children, Wilma and Francis. Sarah P. Love, the widow, received annual dividends under the will as provided therein up to the year 1904, and died in March or April, 1905.

"The objectors are Grace Bennett and Lillian Dent, heirs of Riley Love, and E. A. Duncan and Laura

Duncan, daughter and son-in-law of D. S. Love, one of the executors, and assignees of said D. S. Love.

"L. Judson seems to have done practically all of the financial part of the work in connection with the estate, but at the time of the trial has become afflicted so as to be unable to give much, if any, information as to the details of the management of the estate. A. H. Love is in a sanitarium in St. Louis and wholly unable to appear or give any testimony.

"The case comes here on appeal from the probate court and after filing the appeal in this court, W. R. Judson was appointed receiver to take charge of the estate; he qualified by giving bond and has made a report to this court showing what amount of costs and other assets have come into his hands as such receiver.

"Mr. L. Judson's (the executor's) mind is now in such a condition that he is unable to give any detailed statement as to what has been done or how, except to say that he collected everything he could, put all that he collected to the account of the estate in the Bank of Salem, and never drew anything out except to pay proper charges against the estate or to loan out for the benefit of the estate.

"If this could be relied on as absolutely correct, of course, the bank account would be a correct showing of its present condition, but we know that the best of men are liable to error, and that in a period covering ten years' transactions with a large estate, it is not only possible but probable for errors to have been made, and this could not be relied on unless strongly corroborated by the other testimony.

"The real estate belonging to the estate has been sold in partition and the proceeds divided among the heirs, and by agreement of all parties $21,000 of the bank stock was divided among the heirs in proportion to their respective rights, and $1000 sold by the receiver.

"This settlement was first filed in the probate court, and then tried upon the objections aforesaid.

"D. S. Love appeared in the probate court, by his plea saying that he had never taken any part in the management of the estate and asked to be discharged from any liability, which seems to have met the favor of the court, and he seems to have been discharged, and even a large portion of the money paid to him for services which his assignees and the other objectors say was improperly paid to him, was charged up to the other executors, and judgment was rendered against the other executors for the amount the probate court found to be due the estate.

"While the case is to be tried *de novo* here, the finding of the probate court, which is a part of the record, has been read to the court by the counsel for the objectors.

"Upon the bare reading of it, a number of errors are patent, some of which are now conceded by counsel.

"One of which I will now allude to is a charge of $2200 divided from the Bank of Salem for the year 1905. The bank declared no dividend for that year, but increased its corporate stock from $25,000 to $50,000, using all the surplus and earnings to that date to pay for such increase, and which required an additional cash payment of ten per cent on the increased stock.

"The stock of the estate was originally $11,000, increased to $22,000, and instead of getting $2200 dividend for that year, they made a cash expenditure of $1100 in payment for the increase of stock.

"The other errors I concluded to be therein, will be covered by my subsequent findings.

"About the date of the filing of this settlement, suit was begun in this court for partition of the real estate, and it was put in the hands of a commissioner and the same was sold and divided, except the share of D. S. Love, which was held by the commissioner, under

the orders of this court, to await the determination of another suit by E. A. Duncan as assignee of D. S. Love, against the estate, to redeem from a deed of trust given by D. S. Love to secure four notes for $11,000 due the estate.

"In the last mentioned suit, these notes were canceled, as well as three other notes due by D. S. Love to the estate, after applying to their credit an equal amount of dividends which the other heirs had drawn, two cash payments of $3016, and the balance of $4754 ordered paid by the commissioner by equal distribution among the heirs. In this case was also settled the sum of $1100 loaned to D. S. Love by the executors, and which was never paid back to the estate, but went to the heirs under this adjudication, and for which Mr. Judson should certainly have credit in this settlement.

"At the threshold of this case we are met by the difficulty that the inventory is lost, if indeed it was ever filed. It was never recorded if filed. E. A. Duncan, one of the objectors, thinks he saw it soon after the death of W. R. Love, and that it amounted to $85,000 or $87,000. J. W. Stephens, who was afterwards probate judge, thinks he saw a paper purporting to give the value of the estate at about the same sum. Thinks it was on one sheet of paper. Don't remember any items. And Duncan recalls but one. This evidence would be very indefinite indeed upon which to base a charge.

"McDonald says he wrote two lists of the notes, one to be included in the inventory, and the other for Mr. Judson's own use. The copy he made for Mr. Judson was received in evidence and is before the court. I believe it to be a copy of the inventory for several reasons. First, the probate court received and approved a settlement about a year afterwards practically corresponding with it; second, the names on it correspond practically with the names of collections on the bank book.

"Both parties have filed briefs and also an itemized statement setting forth what the final settlement should be. I have treated these settlements as requests for finding of fact, and declarations of law, giving the theory upon which the case should be settled. Have refused both and adopted one of my own.

"The statement of the exceptors practically conceded their paper to be a copy of the original inventory, and so I find.

"One of the first objections made is that the executor had no right to pay any indebtedness without the sums having been allowed. Ordinarily this would be true, but in this case the will directs them to do so. It is argued that this direction is a nullity, and that the testator had no right to fix any mode for the settlement of his debts except the mode provided by law, and that at the moment of his death his property vested in his legatees, and their right could not be jeopardized by any such provision. These legacies were given on certain conditions which the testator certainly had a right to impose. Complete payments were not to be made for a period of ten years. It is claimed that this is too great a power to put in the hands of executors either as such or as trustees. I understand that any man of sound mind can make any disposition of his property that he desires, if reasonable, and not against public policy. I see nothing unreasonable in this provision, neither can I see that it is against public policy. He puts his executor in the place of the court; he can select his own executors. He certainly had the right to pay his own debts without the costs of suit; why not grant that right to his executors, men of his own selection?

"Counsel argues that it gives too much power to the executor, that it is dangerous, that under such a provision an executor could fraudulently destroy an estate. It is true he might, and he could also embezzle it without such a provision.

"In Powell v. Hurt, 31 Mo. App. 632, the court said: 'Where there is a direction in the will as to what shall be done with the testator's effects, all debate is closed. The will of the testator is the law of the executor.' I have no doubt but that this testator had the legal right to make such a provision, and will approve it in this settlement.

"The most important question, perhaps, in this case, is the capacity in which the executor of the will acted, whether as executor merely, or as trustee, and upon this question depends whether their compensation is limited to five per cent upon the estate administered by them, or whether they may be paid a reasonable compensation for the period of the executorship or trust. Some of their transactions also depend upon this question for their validity.

"It will be noted that the will in question contains provisions that are not found in any cases cited by the counsel or found by the court.

"First, the provision for the payment of the debts without allowance by the probate court. This question has been considered separately in this declaration, and for the reasons there given has been declared to be a valid provision.

"While it is true that if they had failed to pay any debts of the deceased, the creditors could have proceeded through the probate court, and had his claim allowed, but it seems that they made settlement with all of the creditors, and none of them are here complaining of this provision, but it is a portion of the heirs who are making this complaint. The debts seem to have been paid immediately after the death of the deceased; the charges in the latter purported settlements appearing to be expenditures in carrying out the provisions of the will.

"It has been repeatedly held in this State that if there are no debts an administration is unnecessary, and that the probate court cannot lawfully require one.

The primary object of an administration is for the allowance and the satisfaction of debts due by deceased, and if there are no debts, no administration is necessary. If a person may make provisions for the payment of his debts through medium of a trustee, and that provision is satisfactory to his creditors, why is he not in the same situation as one dying without indebtedness? I am unable to see any distinction.

"There is a provision in the will that in event of a vacancy in the executorship either from death, resignation or incapacity of any kind the circuit court should appoint a successor. This provision, to my mind, clearly indicates an intention on the part of the testator to create a trust by the will. Section 4580, Revised Statutes 1899, gives the circuit court jurisdiction to appoint trustees, but nowhere does the court get any jurisdiction to appoint executors or administrators. This provision must be entirely rejected if they are to be regarded as executors, and as we have elsewhere shown, that in this State the clear indication of the testator is held to be the law of construction of his will. I am unable to find any authority that will warrant the rejection or annulment of this clause to the will.

"It is argued, however, that as the executors went into the probate court and made what are termed settlements, they thereby subjected themselves wholly and entirely to the jurisdiction of the probate court, and became executors by such acts, even if they were not so created by the will. After a careful consideration of this question, I can reach no other conclusion than that the term of the will must be the only guide to the capacity in which they acted, and that it was beyond the power of the executors to change or alter their legal status.

"The will requires them to file reports—not settlements—in the probate court, and while this pro-

vision was not complied with in the terms as set forth in the will, yet I can only regard the pretended settlements filed in the probate court as an attempt to carry out this provision. I infer that these acts were done in good faith, supposing that it was a sufficient compliance with the terms of the will, and while, in my judgment, they fall far short of such compliance, yet I do not think they should be afflicted with any fines or forfeitures for such failure except as may now fall on them as a necessary result of their failure to do so. Had they complied with this provision there would be less difficulty in now declaring their condition.

"The fact that the word 'executor' is used in the will, I do not regard as material, as the terms 'executor' and 'trustee' are synonymous. A trustee is but an executor of the trust and no more.

"Again it is said, that the executor cannot in this court say that they are trustees, the case being appealed to this court from the probate court, which had no jurisdiction to settle a trust. The question of jurisdiction was not raised in the probate court and it rendered a judgment, or at least a finding against the two executors, which they deemed unjust. Under the situation, the only remedy they had was by appeal, and they could only appeal to this court.

"If they are in fact trustees and within the jurisdiction of the circuit court in the first instance, may they not now assert that fact? And if that claim is now made and found to be correct, what action should be taken? Should the case simply be dismissed, or should the court proceed to make a settlement and distribution of the estate in the hands of the trustees? All the parties are here. The evidence is all before me. A great deal of time and money has been expended in the trial of the cause, and I see no reason why a full adjudication of the matter should not be made.

"I believe the executors named in the will became trustees by its very terms; that such was the clear intention of the testator, that he did not expect them to wind up the estate in the probate court before entering on their duties as such trustees. That he never contemplated that they should be bound by the strict rules of law regulating executors. His purposes could not have been carried out under such rules. His object was to preserve the estate intact for a period of ten years, being possessed, no doubt, with a well-grounded fear that some of his children would not preserve it for themselves. This object and intention has been recognized and acquiesced in by the trustees, as well as the heirs, for all that period of time, and, in my judgment, to the benefit of the heirs, and the responsibility and work, which could otherwise have been closed at the end of two years, have been lengthened to ten, and now to set up a rule which would change their entire status, and result in mulcting them out of ten to twenty thousand dollars is so far from my idea of justice that I cannot for a moment entertain it.

"I am of the opinion that, the case being before me, no matter how it came, I should try it and ascertain as near as possible what would be right and just in the premises, and on my findings, render judgment and distribution, and finally end the contention between the parties, and this I will proceed to do.

"Among the assets charges in the inventory were four notes on D. S. Love, amounting to $11,000. These notes were never collected by the trustees, but were settled in the suit of Duncan v. Love Estate, as well also, three other notes as follows:

"1st. For $671.90, given on store account, January 17, 1896.

"2d. For $600 for money loaned to D. S. Love, by trustees, January 19, 1903.

"3d. One note for $500, for money loaned by trustees to D. S. Love, May 29, 1905.

"Upon the said notes for $11,000, he paid August 25, 1896, $1038.16, and February 18, 1897, $2017.00.

"This was all the payments ever made by D. S. Love.

"In the settlement I will charge out the $11,000, at the date of inventory, and charge the trustees only with the payments thereon as above stated, and credit them with the money loaned to D. S. Love, and the note given on account.

"These matters were settled in the above mentioned suit and the money distributed direct to the heirs.

"I, of course, will give no credit for any dividend to D. S. Love, as they were applied in said suit as credits upon such notes.

"I find among the papers and vouchers in one of the old settlements, a note on B. F. Wilson, inventoried at principal, $157.08, and interest, $88.03, and attached thereto are affidavits that it had been settled with W. R. Love before his death. I am satisfied it has never been collected, and could not be, and when these affidavits were made, that the note was simply placed with the papers in the probate court, with the intention to take credit for it in the settlement. The note was marked filed by the probate judge, but has never been credited to the trustees. I allow it as unavailable, in the amount at which it was inventoried.

"I have also allowed other unavailables, as appears by list 'A' and 'B,' attached to the judgment and finding in this case, finding that due diligence has been used to collect the same, and that they are and have been uncollectible.

"The testimony and records of the court show that a fair income has been paid to the heirs, during the term of the trust, and that now the real estate has been sold, and the proceeds thereof amounting to in the neighborhood of $40,000 divided among the seven heirs; $21,000 of bank stock has been divided among

them, and $1000 of bank stock sold by the receiver, who has the proceeds for division when this litigation is ended.

"The heirs have each received ten dividends, averaging about seven hundred dollars each, and a final distributive share of $3000 each at the end of the term; and there is now in the hands of the receiver ————dollars of cash for distribution.

"Mrs. Sarah P. Love, having died in March, 1905, no dividends were paid to her account after the year 1904, and taking it altogether I am of the opinion that the trust funds have been fairly managed.

"A considerable amount of money has been kept on deposit in the Bank of Salem, during the whole time, perhaps more than under ordinary circumstances should have been kept there, if it could have been loaned.

"When it is remembered, however, that the estate got nearly one-half of the profits of the bank, and that the bank makes its profits largely from deposits, that during the term of the trust the $11,000 bank stock paid in dividends $19,800, and with the addition of $1100 in cash, was converted into $22,000 stock, I don't think any complaint could be made on the ground of the large deposit in the bank, or that the trustees should be charged with any interest on money while deposited in the bank.

"Special objection is made to the item of the burial expenses of Sarah P. Love, his widow. It is not objected that it was too large, but simply that it should not have been paid out of the estate. The will provides that she should share equally with the other heirs in the annual dividends, and if she lived to the end of the term, should get an equal share on distribution. She got the dividends up to December, 1904, and died March, 1905. It does not appear in evidence whether she had any estate of her own at the time of

her death, but if she did, it would descend, I suppose, in the same manner as the estate of W. R. Love. While the will does not provide for her burial, in such terms, yet no one can read the will and say that it is contrary to its spirit; that the testator intended that the trustees, in the event of her death before expiration of the trust, should see that she was buried. It would make no difference under the law, as to the duty of the trustees, whether she had any other estate or not. If they had the right, under the will, to bury her at the expense of the estate, they could do so, whether she had separate means or not; and if they had not that right, then they could not do so, even if such act should result in her burial at public expense. There was enough accumulated to her on distributive rights at the time of her death to pay her funeral expenses, but even if this were not so, the trustees were warranted in burying her at the expense of the estate.

"There is another item, the payment of which is complained of, and that is the contribution of $100 towards the repairs of the railroad. The testimony shows that the estate was a large holder of the property of the town. That the railroad had been destroyed by washing away with flood, to such an extent that it could not be operated, and it remained in that condition for several months to the great detriment to the values of property in the town. "That the railroad company, whether justly or not, it is not for me to say, demanded of the citizens of the town the sum of fifteen hundred dollars, and required them to pay that amount before they would make repairs and restore service on the road. Other citizens of the town contributed, in larger proportions than the trustees of this estate, and no doubt they were made to believe that there would be great danger in the road not being restored at once, unless the payment was made. And I think, under all the circumstances, the action on the part of the trustees in making this contribution,

wa$ reasonable and intended and no doubt was to the best interest of the estate at the time.

"After a careful consideration, I have reached the conclusion that all the payments made by them and claimed in the settlements were authorized by the will, and reasonably and fairly made, and will be allowed in the settlement."

Thereupon the court rendered the following judgment, and decree, to-wit:

"Now at this day the court having heard this cause and after due consideration of the testimony finds that the list of notes, etc., introduced in evidence, is a copy of the original inventory of the said estate; that the notes therein specified, given by D. S. Love, were not collected by the executors or trustees, but that the same were settled by a judgment of this court in December, 1906, in the case of E. A. Duncan et al. v. L. Judson et al., and the balance remaining due on said note was distributed among the heirs of the estate. The court, however, finds that L. Judson, one of the executors or trustees, did collect from the said D. S. Love, in cash the sum of $3055.16, and reloaned to him the sum of $1100, all of which was settled in said suit. The court also finds that the said D. S. Love, on January 17, 1896, gave his note to said estate for the sum of $671.40 on store accounts included in the note taken on accounts charged, which was also settled in said suit; and the court, in settlement of this case, charges out all of the notes so given by D. S. Love, including the loan aforesaid, and charges the executors and trustees only with the difference between the cash payment made by D. S. Love as aforesaid, and the loan made to him, the said difference being $1955.11, and gives no credits for any dividends to said D. S. Love that were settled in said suit.

"The court further finds that there was an error in the inventory of $164 in the item of Halbrook note

and Blackwell note, which is credited in this settlement.

"The court further finds that the executors or trustees, immediately after taking charge of said estate, took notes for accounts in the sum of $2871.92, which the court finds includes a note of ninety dollars by Horace Love for mules; said notes are shown on pages 20, 21, 22, 23, 24, 25, and four items on page 26, of the note book offered in evidence.

"The court further finds that they collected $800 in accounts not included in said notes; that they collected from the sale of cattle to Young, Clark and others the sum of $1972 which were not included in the inventory.

"That of the notes inventoried against them, there were unavailable notes, shown in list "A" herewith filed, inventoried in the sum of $1703.63, and of other notes, list "B" taken on account, and uncollected and unavailable, the original amount $415.33. That there were two notes on Robert J. Carty, charged in the inventory as follows: First note, $4103.03; second note, $474.36, which said large note was secured by a deed of trust on land; neither of said notes were collected, but the land was sold to Blackwell for $3250. That there was also a note on J. M. Moodenpyle, secured by a deed of trust, which was never collected and the land was sold, bought in for the estate, and sold in partition; the amount of said notes, as inventoried, $639.20.

"The court finds that they collected $18,250 in rents during the whole time, which for convenience the court divided into ten eqaul parts.

"They have charged and there is hereby allowed a salary of $14,250, which is also divided in ten equal parts in settlement.

"The court further finds that they have paid out in taxes during the said ten years the sum of $5,817.50,

which for convenience in the settlements is divided into
ten equal parts.

"The court also further finds that the executors
or trustees paid out the sum of $1100 on the increase
of bank stock of the Bank of Salem, that they are en-
titled to credit for $1163.90 on account of the Clar-
ence Hill notes; $415 on notes of Dent County Mer-
cantile Company, lost by failure of company, and for
costs $7699.85 turned over to W. R. Judson, receiver,
which sum includes collections made by said receiver
on notes turned over to receiver by the trustees or ex-
ecutors.

Amount of notes inventoried .........$44,888.00
Interest accrued ....................  3,486.69
Notes taken on accounts .............  2,871.92
Total notes and interest included in in-
      ventory and notes taken on ac-
      counts .......................$51,246.01

From which I deduct the following inventory:
Halbrook, $100, Blackwell, $64 ........   164.00
Unavailable notes listed in inventory,
      list of which is filed at amounts in-
      ventoried (list A) ..............  1,703.63
Unavailable notes taken on accounts, list
      of which marked "B" is filed ....   415.33
Note No. 1, R. J. Carty, P. and Int. as
      inventoried .....................  4,103.03
Note No. 2, R. J. Carty, P. and Int. as in-
      ventoried .......................   474.36
Note of J. M. Moodenpyle, P. and Int. as
      inventoried .....................   639.20
Note of D. S. Love, settled in suit in cir-
      cuit court direct with heirs ...... 11,671.90

Total deductions from inventory .....$19,171.45

Balance on inventory ...............$32,075.00

"Settlement at end of First Year, December, 1896:

Amount of inventory as above set forth $32,075.00

Interest on $29,000 at 7½% ........ 2,175.00

Rents, first year .................... 1,825.00

Bank dividends, first year .......... 2,200.00

Certificate of deposit ............... 3,500.00

Interest on same .................... 73.00

Cash in inventory ................... 1,174.00

County warrants ................... 42.00

Collected from sale of cattle ......... 1,972.00

Total .......................$45,036.00

"Upon which years the following credits are allowed:

Amount paid on debts and expenses

(Miscellaneous) .................$ 4,322.00

Taxes ............................ 581.75

Allowed on salaries ................. 1,425.00

Dividend paid to Sarah P. Love ...... 678.03

Dividend paid to Horace Love ........ 678.03

Dividend paid to the heirs of Riley Love 678.03

Dividend paid to Elizabeth Hodges .... 678.03

Dividend paid to Mary Judson ........ 678.03

Dividend paid to Hill heirs .......... 678.03

Dividend paid to A. H. Love .......... 678.03

Total disbursements first year .... $11,074.96

Balance due estate at end of first

year ......................$33,961.04

"Settlement for the Second Year, 1897:

Balance due estate at end of year 1896..$33,961.04

Interest on $29,000 one year .......... 2,175.00

Rents ............................ 1,825.00

Bank dividends .................... 2,200.00

Total charges ...................$40,161.04

"Credits Second Year as follows:

| | |
|---|---:|
| Taxes | $ 581.75 |
| Salaries | 1,425.00 |
| Miscellaneous charges | 126.13 |
| Dividends to Sarah P. Love, A. H. Love, Hill heirs, Riley Love's heirs, Elizabeth Hodges, Horace Love and Mary Judson, seven shares, each $734.61 | 5,142.27 |

| | |
|---|---:|
| Total credits | $ 7,275.15 |
| Balance due estate end second year | $32,885.89 |

"Settlement for Third Year, 1898:

| | |
|---|---:|
| Balance due estate at end of second year | $32,885.89 |
| Interest on $29,000 | 2,175.00 |
| Rents | 1,825.00 |
| Bank dividends | 2,200.00 |
| Amount realized on sale of Carty land | 3,250.00 |
| Received from D. S. Love on notes in excess of amount reloaned to him | 1,955.00 |

| | |
|---|---:|
| Total charges | $44,291.00 |

"Credits on Third Year:

| | |
|---|---:|
| Taxes | $ 581.75 |
| Salaries | 1,425.00 |
| Miscellaneous charges | 215.35 |
| Dividends paid to seven heirs named in the second settlement, each $780 | 5,460.00 |

| | |
|---|---:|
| Total credits | $ 7,682.10 |
| Balance due estate at end of third year | $36,608.90 |

"Settlement at end of Fourth Year, 1899:

| | |
|---|---:|
| Balance due estate at end of third year | $36,608.90 |

Judson v. Bennett.

| | |
|---|---:|
| Interest on $32,000 .................. | 2,400.00 |
| Rents ............................. | 1,825.00 |
| Bank dividends .................... | 2,200.00 |

| | |
|---|---:|
| Total ......................... | $43,033.90 |

"Credits on Fourth Year:

| | |
|---|---:|
| Taxes ............................$ | 581.75 |
| Salaries ........................ | 1,425.00 |
| Miscellaneous charges ............. | 245.91 |
| Dividends to seven heirs above named, | |
| each $725 ..................... | 5,075.00 |

| | |
|---|---:|
| Total credits ...................$ | 7,327.66 |
| Balance due estate at end of fourth | |
| year ......................$35,706.29 | |

"Settlement for Fifth Year, 1900:

| | |
|---|---:|
| Balance due estate at end of fourth | |
| year .........................$35,706.29 | |
| Interest on $30,000 ................. | 2,250.00 |
| Rents ............................. | 1,825.00 |
| Bank dividends .................... | 2,200.00 |

| | |
|---|---:|
| Total ......................... | $41,981.29 |

"Credits on Fifth Year:

| | |
|---|---:|
| Taxes ............................$ | 581.75 |
| Salaries ......................... | 1,425.00 |
| Miscellaneous charges .............. | 168.33 |
| Dividends to seven heirs above named, | |
| $700 each ...................... | 4,900.00 |

| | |
|---|---:|
| Total credits ...................$ | 7,075.08 |
| Balance due estate at end of fifth | |
| year ......................$34,906.26 | |

"Settlement at the end of Sixth Year, 1901:

| | |
|---|---:|
| Balance due estate at end of fifth year.$34,906.26 | |
| Interest on $29,000 ................. | 2,175.00 |

Rents ............................. 1,825.00

Bank dividends ...................... 2,200.00

Total charges ...................$41,106.26

"Credits on Sixth Year:

Taxes ............................$    581.75

Salaries .......................... 1,425.00

Miscellaneous charges ............... 399.25

Dividends to seven heirs above named

$700 each ...................... 4,900.00

Total credits ...................$ 7,306.00

· Balance due estate at end of sixth

year ......................$33,800.26

"Settlement at end of Seventh Year, 1902:

Balance due estate at end of sixth year. .$33,800.26

Rents ........................... 1,825.00

Rents ........................... 1,825.00

Bank dividends .................... 2,200.00

Total charges (Error of $25 in addi-

tion) ......................$39,625.26

"Credits on Seventh Year:

Taxes ............................$    581.75

Salaries .......................... 1,425.00

Miscellaneous charges ............... 139.78

Dividends to seven heirs above named,

$700 each ...................... 4,900.00

Total credits ...................$ 7,046.53

Balance due estate at end of seventh

year ......................$32,578.73

Judson v. Bennett.

"Settlement at the end of Eighth Year, 1903:

Balance due estate at end of seventh
year ........................$32,578.73

Interest on $20,000 ................. 1,500.00

Rents ............................. 1,825.00

Bank dividends .................... 2,200.00

Total charges ..................$38,103.75

"Credits on Eighth Year:

Taxes ...........................$    581.75

Salaries ......................... 1,425.00

Miscellaneous charges .............. 339.11

Dividends paid to Sarah Love, Horace
Love, Elizabeth Hodges, Mary Judson, Riley Love's heirs, A. H. Love,
six heirs, each $650, and C. A. Hill
$216.66, and Mrs. Philip Stolzer
$216.55 (this being two out of the
three of the Hill heirs), total dividends paid ......................$ 4,333.33

Total credits ...................$ 6,679.19

Balance due the estate at end of
eighth year ................$31,424.54

"Settlement at the end of Ninth Year, 1904:

Balance due estate at end of eighth
year ........................$31,424.54

Interest on $20,000 ................ 1,500.00

Rents ............................. 1,825.00

Bank dividends .................... 2,200.00

Total charges ..................$36,949.54

"Credits on Ninth Year:

Taxes ...........................$    581,75

Salaries ......................... 1,425.00

Miscellaneous charges ...............$    975.92
Dividends paid to Horace Love, Mary
    Judson, Riley Love's heirs, Eliza-
    beth Hodges, A. H. Love, five heirs,
    each $650, and C. A. Hill and Mrs.
    Philip Stolzer, each $216.66 (Sarah
    P. Love, widow, having died during
    this year did not receive any divi-
    dend, and Clarence Hill one of the
    three Hill heirs omitted).   Total
    dividends paid for year .........$ 3,683.33

Total credits ...................$ 6,666.00
Balance due estate at end of ninth
    year .....................$30,283.54

"Settlement at end of Tenth Year, 1905:
Balance due estate at end of ninth
    year .........................$30,283.54
Interest on $14,000 .................  1,050.00
Rents ............................  1,825.00

Total charges .................$33,158.54

"Credits on Tenth Year:
Taxes ............................$    581.75
Salaries ..........................  1,425.00
Miscellaneous charges ...............   338.39
Dividends paid December, 1905, to Hary
    Judson, Horace Love, A. H. Love,
    Elizabeth Hodges, Riley Love's
    heirs, each $3,012.18, Charley Hill
    $1,004.06, Mrs. Philip Stolzer $1,-
    004.06, total dividends paid in
    1905 .........................$17,069.52

Total credits ...................$19,414.76
Balance due estate at end of tenth
    year .....................$13,743.78

"To this balance is added the following charges:

Collected on accounts ...............$    850.00
Additional interest charges ..........    260.00

Total .......................$14,853.78

"Upon which the court allows the following credits:

Amount paid out on increase of stock
of bank ........................$ 1,100.00
Amount of the Clarence Hill notes ....  1,163.90
Amount of the Dent Mercantile note ..   415.00
Dividends paid to heirs in June, 1906,
Mary Judson, Horace Love, A. H.
Love, Elizabeth Hodges and Riley
Love's heirs, each $700. Total dividends
paid out in June, 1906 .....  3,500.00
Amount of cash paid to W. R. Judson,
receiver ......................  4,516.82
Amount collected by W. R. Judson, receiver,
on notes turned over to him
by trustees .....................  3,183.03
Allowed as attorney's fees for the defense
of the case of Duncan v. Judson
et al., for accounting of store
profits ........................    200.00

Total credits ...................$14,078.75
Which leaves a balance due from the
Trustees, over and above the amount
turned over to the receiver ......$    775.03

"In this settlement no allowance is made or credit given on the note of Mrs. Lizzie Kenamore, and the same is ordered returned by the receiver to the trustees, and no credit is given them on account of the note turned over to the receiver of T. A. Smith, and the said note is ordered turned back to the trustees.

## "LIST A

"Unavailable notes inventoried at amount named in inventory, credited as above:

| | |
|---|---:|
| Jas. Vance ..........................$ | 7.71 |
| W. E. Cage ........................ | 5.13 |
| J. S. Ault ......................... | 5.86 |
| G. H. Wells ........................ | 10.05 |
| T. H. Condray ..................... | 27.65 |
| L. T. Dabney ...................... | 19.12 |
| J. T. Coppedge .................... | 33.70 |
| J. W. Long ........................ | 20.75 |
| J. C. Welch ....................... | 73.42 |
| L. A. Collins ..................... | 34.45 |
| W. D. Hawkins .................... | 7.86 |
| J. R. Jones ....................... | 14.10 |
| S. Headrick ....................... | 121.93 |
| W. Harmon ........................ | 12.83 |
| F. M. Wells ....................... | 35.40 |
| J. H. Hewitt ...................... | 250.67 |
| T. D. Carty ....................... | 19.00 |
| B. C. Reddick ..................... | 5.65 |
| W. C. Widger ...................... | 225.00 |
| W. M. Wells ...................... | 26.95 |
| W. M. Wells No. 2 ................. | 56.20 |
| Joe Hayes ......................... | 18.00 |
| L. T. Dabney ...................... | 29.31 |
| B. V. Gregory ..................... | 65.35 |
| Geo. Springer ..................... | 325.00 |
| Wm. Harrison ..................... | 12.83 |
| B. F. Wilson ...................... | 245.11 |

$1,703.63

## "LIST B

"Notes unavailable—Taken on accounts at
original amounts:

| | |
|---|---:|
| Bob Jackson ........................$ | 7.00 |
| E. A. Duncan ...................... | 150.00 |
| W. P. Hogan ...................... | 15.30 |
| Frank Maher ...................... | 15.00 |
| H. L. Nettle ...................... | 6.20 |
| A. Berry ...................... | 25.25 |
| John Taff ...................... | 29.15 |
| J. H. Hewitt ...................... | 63.60 |
| Jube Carty ...................... | 30.25 |
| J. T. Sackett ...................... | 17.10 |
| E. S. Tomer ...................... | 48.65 |
| G. A. Hudspeth ...................... | 7.83 |

$415.33

"And it is ordered by the court that the settlement of the estate of W. R. Love, deceased, is hereby entered and approved as a final settlement of said estate, and that the said trustees or executors pay over to W. R. Judson, trustee, appointed receiver by the court, the said sum of $775.03 so found to be due by them to said estate as aforesaid."

"The notes referred to as 'unavailable' in list A amount to $1,703.63. The notes referred to in list B as 'unavailable' amount to $415.33. All of these notes came into the hands of the executors when they took charge of the estate, or were taken by them in lieu of unsecured accounts due to W. B. Love at the time of his death, and the testimony showed that the notes were all worthless.

"There is no charge made by the exceptors, and there is no testimony to show that the executors ever mingled the funds of the estate with their own, or ever made use of the estate in their private business, or for private gain, or ever lost or embezzled any part of

the estate, or in any way was ever guilty of any breach of their trust; but on the contrary, the testimony showed and the court found that Mr. Judson had the care and management of the estate during the greater part of the time from the date of the probate of the will, and did practically all of the work in connection therewith. That he was a man of keen judgment, of integrity, and exceptionally good business ability, up until about two years before the date of this trial, when his mind began to fail him. That he in good faith tried to carry out the terms of the will and execute the trust, and had substantially done so. He was unable to give very much information to the court on the trial of this cause, but testified that all moneys ever collected by him were deposited in the Bank of Salem in the name of the Love Estate, and that all moneys paid out by him were by checks on this account. The bank books produced in evidence showed a complete exhibit of the accounts so kept from the date of the granting of the letters of administration until the date of his final settlement. These books showed the various amounts of money received by the trustees and from whom received and on what account. These books, in connection with the 'Rent book,' an account book of the rentals charged and collected against the various tenants of the Love Estate realty, gave a good history of the entire transactions of the trustees.

"None of the vouchers paid by the executors, and for which they took credit, are challenged individually, but they are challenged collectively, because paid out without an order of the probate court. The will directed said executors to pay any and all accounts which they deemed just, without securing an order from the probate court for the payment of the same, and the executors followed this provision of the will, merely exhibiting the accounts for allowance and approval in their annual reports. It was admitted on

the trial that a voucher or receipt was on file for every item of credit claimed in the reports, and that all the reports were approved by the probate court—the only allowance ever made by the executors or trustees —and in each and every instance the probate court made an order allowing the amount charged by the executors in each annual settlement. The total amount paid to the executors during their entire term was $14,350.00, of which amount Mr. Judson received one-half and the other executors one-fourth each.''

After taking the proper preliminary steps, the cause was appealed to this court.

The following are appellant's asignments of errors, to-wit:

1.    ''The court erred in its finding of fact.

2.    ''The court erred in refusing appellant's declaration of law number 4, and in allowing the executors the sum of $14,250 as commissions, and in allowing any commissions whatever, and in holding that the executors were entitled to commissions in excess of 5 per cent on the sums actually disbursed by them.

3.    ''The court erred in its method of computing interest on the amount loaned, and erred in its finding upon the amount that was loaned, upon which interest was computed, and erred in its finding as to the total amount of interest with which the executors should be charged.

4.    ''The court erred in refusing appellants' declaration of law number 2, and erred in holding that the executors could lawfully pay demands against the estate without such demands being first presented to and allowed by the probate court of Dent county.

5.    ''The court erred in the amount which it found to be due the estate from the executors.

6.    ''The court erred in overruling appellants' motion for a new trial.''

## OPINION.

I. This cause had its origin in the probate court of Dent county, and is predicated upon certain exceptions, filed therein by certain legatees under the will of W. R. Love, deceased, to the annual and final settlement made by the executors thereunder. The probate court sustained most of the objections, and entered judgment against the executors for many thousands of dollars. An appeal was taken to the circuit court, and there practically all of the exceptions were disallowed, and the legatees appealed to this court.

While the items of the various settlements and the exceptions thereto are very numerous, covering some twenty-five printed pages, yet the assignment of errors made in this court reduces the questions presented for determination to a very small percentage of those which were presented to the probate and circuit courts.

The first assignment of error is, that the circuit court erred in its finding of facts. The assignment does not state, nor does counsel at any other place in their briefs point out in what particular the court erred in that regard. We have, in the statement of the case, set forth the findings of the court, and have carefully read the evidence introduced in support of and against the same, and have been unable to find any fact found by the court which is unsupported by the evidence.

We will, therefore, take it for granted that the facts of the case are as the court found them to be, and eliminate this assignment from further consideration.

II. It is next insisted by counsel for appellants that the circuit court erred in refusing to give instruction numbered two requested by them. That instruction reads as follows:

"2. The court declares the law to be that under the will of W. R. Love, deceased, read in evidence,

the executors thereof have no right to pay claims or demands against said estate unless and until said claims were first presented to and allowed by the probate court of Dent county, Missouri. And said executors should in their final accounting be charged with and required to account for all claims and demands paid by them which were not so presented and allowed by the said probate court.''

The contention of counsel for appellants is, that the law of the State, applicable to probate matters, and not the wills of the deceased persons, governs the settlement and distribution of their estates. That contention is measurably true, but it does not necessarily follow therefrom that the executors are not entitled to a credit for a demand presented against the estate and paid by them which had not first been probated. If the claim paid was in fact a legitimate demand against the estate, and could have been legally probated against it, then the mere fact that it was not first presented to and allowed by the probate court would not of itself bar the executors' right to a credit for such payment. Especially would that be true as to heirs and devisees. Such conduct on the part of the executors, however, might present quite an important question as between creditors, and as between themselves and creditors, where the assets are insufficient to pay all obligations of the estate. But where the assets are ample to pay all the legal demands existing against the estate, and none but such have been in fact paid by the executors, then the heirs and devisees are not injured and have no legal grounds for complaint. However, in all such cases, the executors pay all such demands at their own risks; that is, if they should pay a demand presented against an estate without first requiring it to be probated, when, in fact, the claim was not a legal demand against the estate, then the loss would fall upon the executors, and the probate court would not be warranted in allowing the executors credit for such pay-

ment; whereas, upon the other hand, if the claim had been properly probated, and, after payment, it should develop that the claim was not in fact a lawful demand against the estate, nevertheless the executors should be allowed credit for the payment so made, for the reason that in such case they followed the law and performed their full duty, and the error which resulted in the loss could not be charged against them. But the instruction under consideration announces the broad proposition, that where the executors paid a claim, however legal and just it might have been, which had not been previously probated, could not be allowed as a credit in favor of the executors. Counsel for appellants have cited us to no authority supporting that proposition, nor have we been able to find any such; but, upon the contrary, the books are full of cases holding to the contrary. Moreover, if this was a new proposition and now for the first time presented here for determination, we would not hesitate in holding that the executors would be entitled to all such credits. Such a ruling would be based upon right and justice, which is the foundation of all law.

We are, therefore, of the opinion that the trial court properly refused said instruction.

III. The next insistence of counsel for appellants is, that the trial court erred in refusing to give instruction numbered four asked by them. It reads as follows:

"The court declares the law to be that under the will of W. R. Love, deceased, read in evidence, and under the testimony in this case, L. Judson, D. S. and A. H. Love are not entitled to compensation as trustees in addition to their statutory five per cent on disbursements, as executors of said will, unless they first made final settlement of said estate as executors, in the probate court of Dent county, Missouri, and thereafter qualified as trustees and took charge of said estate as

such; and in this connection the court declares the law to be, that if said L. Judson, A. H. and D. S. Love made no final settlement as executors until this time, but took out letters testamentary, made settlements from year to year as executors in the probate court, and held themselves out as executors, then they are estopped at this time from denying that they are executors and claiming to be trustees, and entitled to compensation as trustees.''

If we correctly understand counsel for respondent, they do not deny the correctness of the legal proposition stated in this instruction, but insist that it is not applicable to the facts of the case, their contention being that the persons named in the will as executors thereof are not, under a proper construction thereof, executors at all, but are simply trustees, appointed by W. R. Love to hold, manage and distribute the trust property described in the will. Or, to use counsel's own language, their contention is:

''That the intention of the testator was to create a trust of which the named executors were to be trustees, is a deduction unquestionably authorized by the will itself, in this:

''(1). The testator created a trust which was to last for a period of ten years.

''(2). The testator placed the burden and responsibilities of trustees upon his executors when he imposed upon them the personal duties of managing the estate and holding the same together for a period of ten years, and paying out the income.

''(3). That he made provision that in the event of mismanagement, the circuit court of Dent county, Missouri, should take charge, remove the offending trustees and appoint another in his stead.

''(4). That he did not require settlements to be made—but made provisions that the trustees should file annual reports in the probate court.''

That being true, as they contend, they make the further contention, that section 223, Revised Statutes 1899, limiting the compensation of executors and administrators to five per cent of the personal property of the estate, has no application to this case, but they are entitled to a reasonable compensation for the services performed as trustees of the estate, and that $14,250, the amount allowed by the circuit court, was just and reasonable, and for that reason the finding of the court should not be disturbed.

The learned trial court adopted the views of counsel for respondents regarding this contention, as fully appears from the findings and decree.

While there can be no question but what the will of W. R. Love conveyed the property described therein to the executors named in trust for the purposes therein stated, and prescribed their powers and duties regarding the same; nevertheless, that is not inconsistent with the idea that it was also the intention of the testator that they should also qualify and act as executors in the administration of his estate in the probate court. In fact, the will upon its face shows that such was his intention. But independent of that, the law imposes certain duties upon executors which they cannot escape, even though a contrary intention of the testator might appear from the will. Among the duties so imposed by the law are the following: The executors must qualify as such, inventory the property of the estate, have it appraised, collect and preserve the personal property, pay the debts of the estate and cost of administration, and to distribute the surplus to those entitled thereto, as directed by the terms of the will, or as provided by law; also the duty imposed by the will upon the executor of reducing real or mixed property to personalty for distribution are executorial duties. All of the duties previously mentioned are prescribed and imposed by express statutes of this State. But those duties imposed by the will which have for

their object something beyond the collection, adminis-
tration and settlement of the estate are personal to
the executor in the nature of a trust, and for their
performance he is bound in his capacity as trustee only.
[Schlickman v. Citizens' National Bank, 129 S. W.
(Ky.) 823, l. c. 826.]

The Court of Appeals of Kentucky in discussing
this question in that case said: "Other duties may be,
and frequently are, imposed upon the executor by the
will, and where these duties look toward reducing real
or mixed property to personalty for the purpose of
distribution, they are likewise regarded and treated as
executorial duties. But when duties are imposed that
have an aim further and beyond that of the settlement
of the estate, they are treated as personal to the named
executor and looked upon in the nature of a trust, and
the executor, in his capacity as such, is not bound for
their performance, but only in his capacity as trus-
tee."

The same doctrine was announced by this court
in the case of West v. Bailey, 196 Mo. 517, l. c. 520.
There it was said: "The will bequeaths the $2500 to
the two trustees named and requires them to invest
the sum in real estate as a homestead for Mrs. Graves,
'taking the title to her for and during her natural
life, and at her death to the children of her body or
their descendants, share and share alike.' Under the
terms of the will the money was not to be given to
Mrs. Graves or any part of it, but to be invested in
real estate for a homestead for her in which she was
to have a life estate and her children a remainder in
fee. [Sec. 4592, R. S. 1899.] The trustees named in
that clause were the same persons who were named
in the seventeenth clause of the will as executors, one
of whom, Mr. Knight, declined to qualify, and the
other Joseph G. Newkirk, qualified as sole executor,
but was afterwards removed by the probate court and
the plaintiff was appointed in his stead. Those facts

may have had some influence on the mind of the court in decreeing that the fund in question be held by the administrator to be disposed of by paying it to Mrs. Graves as the court might thereafter direct. But if so, they did not justify the decree. The fact that the same persons who were named as executors were also named as trustees did not merge the trusteeship in the executorship; they were separate and distinct offices. The one might be accepted and the other declined, or the duties of one might remain to be performed after the other had been fully executed."

And the Court of Appeals in the case of Marshall v. Meyers, 96 Mo. App. l. c. 648, said: "The executor, as such, handles the fund and administers the trust as directed by the will. [Field v. Hitchcock, 17 Pick. 182; White v. Mass. Tech., 171 Mass. 84; Hodges Estate, 63 Vt. 661; Carson v. Carson, 6 Allen, 397; Pettingall v. Pettingall, 60 Me. 423; Richardson v. Knight, 69 Me. 285; Scholl v. Olmstead, 84 Ga. 693; Keplinger v. Maccubbin, 58 Md. 203.] Though his ordinary powers as executor have been added to by the trusteeship. He occupies a double capacity. He is an executor proper, for the ordinary administration of the estate, and he is also a trustee to administer the trust fund as directed by the testator. As to matters pertaining to the trusteeship he may exercise the power and authority of a trustee under the law and the direction of the will uninfluenced by restraint upon the office of executor. That an executor administering a trust fund must exercise more power in that regard than if he was administering the fund in ordinary administration of a decedent's estate ought not to be considered disputable. For the ordinary duties and powers of an executor pertain merely to gathering the estate together, paying debts and legacies and distributing the remainder. The powers of the two capacities in one person are distinct."

Having reached the conclusion, and properly so we think, that the same person may act under the will in both capacities of executor and trustee, it remains to be determined whether or not he can so act at the same time and receive compensation for services performed by him in each of those capacities.

Counsel for appellants contend that respondents are not entitled to an allowance of compensation for services performed in both of those capacities, covering the same period; also that they cannot claim compensation as a trustee and not as an executor  In other words, counsel for appellants insist that respondents having qualified and acted only as executors, they must continue to act in that capacity until they are discharged as such by the probate court, which has never been done in this case, and, consequently, are only entitled to compensation for services performed by them as such executors.

In 18 Cyc. 1160, it is said: ''Where by the terms of the will the two functions with their corresponding duties coexist and run from the death of the testator to the final discharge, interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function should end and the other begin, double commissions or compensation cannot be allowed in both capacities.''

In Woerner, vol. 2, sec. 532, it is said: ''Where by the terms of the will the functions of an executor and of a testamentary trustee coexist in the same person, the question arises, is he entitled to double commissions.  Where the functions of an executor and a trustee are so interwoven and blended that they are inseparable, and when so, as must be the case when the trusteeship is annexed to the office of executor alone, double commissions are not allowed.  So for the same reason, he is not entitled to compensation for services as trustee and not falling within the scope

of his duties as executor, such as the sale or lease of real estate for purposes collateral to the administration.''

In Jacobs v. Jacobs, 99 Mo. 1. c. 437, the question for decision was what were the legal fees of an executor who claimed in addition to his commission of five per cent, certain commission paid agents for the sale of real estate belonging to the estate, which the executor was directed by the will to sell. The court said: ''The statute is the measure of the compensation of the executor.

In 8 Cyc. 1156 it is said: ''When the exact amount of compensation or the maximum amount allowable is fixed by statute, in the absence of a testamentary or statutory provision for increased compensation for extraordinary services, personal representatives can be allowed only the fixed compensation, even though the administration of the estate has been unusually difficult, or they have rendered unusual services, which have benefited the estate.''

In Cruce v. Cruce, 81 Mo. 1. c. 682, it is said: ''The position taken by appellants, that the executor ought to be held responsible as a guardian or curator in this proceeding, cannot be maintained. His responsibility commenced as an executor, and it must continue until his final settlement and discharge as such. He received the assets in that capacity, and in submitting his annual and final settlements he must be regarded as accounting for them in the same capacity. Nothing has happened to change his liability or terminate his authority as executor.''

In 28 Am. and Eng. Ency. Law (2 Ed.), page 935, sec. 8, it is said: ''As a rule the executor does not take a fund as trustee until the trust fund has in some way legally been ascertained, identified and separated from the general funds of the estate, and the trustee had entered upon the duties of his office of trustee, as distinct and separate from his functions as executor.''

The case of In re Slocum, 169 N. Y. 153, is very similar to the case at bar. There the will directed the executor to hold the corpus of the estate until the death of the testator widow and son, and to pay to them during their lives the income thereof, and at their death to distribute the estate according to the provisions of the will. One of the questions raised at the final settlement was identical with the question now under consideration; namely, were the executors entitled to double compensation, or were they only entitled to their regular commissions prescribed by the statute as executors? In discussing that case, the court said: "A second question is made respecting the allowance of double commissions, namely, one allowance to the executors as such, and another allowance to the same persons as trustees. The surrogate denied the double allowance. The appellate division allowed it. We think the surrogate was right. There was no distinct separation in the will of the duties of executors from those of trustees. They were to hold the corpus of the estate until the death of both his widow and son, and then pay and distribute it to the legatees, who should be identified by the description, contingencies, and conditions specified in the will, now known to be the widow and children of the son; meantime to pay the income to the life tenants as they should prove to be entitled thereto under the conditions of the will. There was no direction for a division of the estate into separate funds or trusts. The main purpose of the trust powers given to the executors was to enable them conveniently, wisely, and safely to place the estate upon an income-bearing basis, and so administer it that both principal and income should be distributed according to the testator's directions. The executors have administered the estate, rather than a trust fund derived from the estate. Moreover, they never had any judicial settlement of their accounts as executors, and thus they never formally closed their accounts and

duties as such and opened and began them as trustees. This is their first judicial accounting and covers their entire service. Thus we have their practical construction of the situation. The authorities, we think, do not sanction double commissions in such a case. The order of the appellate division should be affirmed, except as to the commissions, and in that respect reversed; the account as to income and commisions to be restated by the surrogate in accordance with this opinion.''

The same identical question arose in Bruere v. Gulick, 41 N. J. Eq. 280, and the court said: ''There is no evidence in the provisions of the will that the testator intended that the executors should hold the balance, not as executors, but in a different capacity, as trustees. He clearly intended that the trust should be executed by the executors in that capacity. Where, as in this case, the trust is inseparable from the executorship, the executor is not entitled to double commissions, first as executor and then as trustee.''

In re Potter, 27 N. E. 475 (N. Y. Court of App.), this was practically the only question in issue, and the court held that to the ordinary duties of an executor may be added the performance of a trust in such a manner that the two functions run together and a trust duty thus be imposed upon an executor which thereby becomes and is made a function of his office, but it is said: ''A will must go further than that to admit of double commissions, and must clearly and definitely indicate an intention of the testator to end the executor's duty at some point of time, and require him thereupon to constitute and set up one or more several trusts, to be held and managed as such for the benefit of the beneficiary. This will manifests no purpose of that character; for while it creates a trust and speaks of the executors sometimes as trustees, there is no provision in it which requires or contemplates a

holding of any part of the estate by trustees as distinguished from executors. At its very outset it makes the executors either wholly and continuously such, or wholly and continuously trustees, for in its first sentences it gives the entire estate in trust, and directs the 'executors and trustees hereinafter named' to retain it undivided till the period of distribution, and meanwhile to pay funeral expenses, debts, accruing taxes, repairs, reasonable insurance, one fixed and definite annuity, and aliquot parts of the net accruing income until the final distribution. There is no provision requiring any share or trust fund to be severed from the body of the estate, or to be ascertained as a residue of principal to be kept invested and its specific income payable to a beneficiary, but all duties without separation, whether imposed by the law or by the will, run on together, mingled and blended to the end. An examination of the cases in which double commissions have been allowed will show that they are exceptional in their nature, and contained provisions distinctly and definitely pointing to a holding by trustees as such after the duties of the executors were completed and ended. This is not such a case, and double commissions were properly withheld.''

Counsel for respondents cite no authority in support of their contention for double commissions but rest their contention upon this suggestion: ''The character of executor and trustee being united in these respondents by the will of the testator, then on the very date that the estate held by them as executors becomes payable to them as trustee, the law will *eo instanti* transfer it from one character to another, and this is true even though the executor makes no settlement or election showing in what capacity he held the funds.''

This contention of counsel for respondents is unsound, for the reason that there is nothing contained in the will of the testator which indicates that he in-

tended for the executors to act in both capacities at the same time, and it is questionable whether he intended for them to do so at different times; but, be that as it may, it is perfectly clear from the record in this case that respondents have only acted in the capacity of executors under the will from the beginning down to date of trial, and have never pretended to act as trustees; and, consequently, they are not entitled to compensation for services as trustees, for the obvious reason that they have performed no services in that capacity.

We are, therefore, of the opinion that the court erred in refusing to give instruction numbered four asked by counsel for appellants.

IV.   Counsel for appellants complain of the action of the trial court in deducting from the assets in the hands of the executors a claim of some $14,000 against D. S. Love, and certain other demands alleged to be due the estate.

It appears from the record and the decree of the court, that a suit in partition of the real estate belonging to the estate was begun in the year 1906; that the claims before mentioned were injected into that suit by way of set-off or recoupment against the share or interest of said D. S. Love in and to said real estate, and were fully adjudicated therein.  In passing upon those demands the court, in the case at bar, made the following finding:

"Among the assets charged in the inventory were four notes on D. S. Love, amounting to $11,000.  These notes were never collected by the trustees (executors) but were settled in the suit of Duncan v. Love Estate (the partition suit previously mentioned) as well as also three notes as follows:

"1st.   For $671.90 given on the store account January 17, 1896.

233 Sup.—42

"2d. For $600 for money loaned D. S. Love by trustees January 19, 1903.

"3d. One note for $500 for money loaned by trustees to D. S. Love, May 29, 1905.

"Upon said notes for $11,000 he paid August 25, 1896, $1038.16, and February 18, 1897, $2017.00. These were all the payments ever made by D. S. Love.

"In the settlement I will charge out the $11,000 at the date of inventory, and charge the trustees only with the payments thereon as above stated, and credit them with the money loaned D. S. Love and the note given on account. These matters were settled in the above mentioned suit, and the money distributed direct to the heirs.

"I, of course, will give no credit for any dividends to D. S. Love, as they were applied in said suit as credits upon such notes."

By reading the decree of the court previously set out in the statement of the case, it will be seen that the court disposed of these demands in the manner just stated, and, after reading the evidence bearing upon the same, we are satisfied that the court properly disposed of those notes and demands.

Complaint is also made by counsel for appellants to the action of the court in not charging the executors with various other items, which they claim were valid demands due the estate, and which could have been collected by due diligence, but were not. Among them are the notes mentioned in lists "A," amounting to $1703.63, and in "B," amounting to $415.33, set out in the statement of the case; also two notes against Robert J. Carter, one for $4103.03, and the other for $474.36. The former was secured by a deed of trust upon real estate. And there was also a note against J. M. Moodenpyle for $639.20, secured by deed of trust on real estate. The court found that none of the notes mentioned in lists "A" and "B" were collectible; that neither of the notes owing by Carter were collect-

ible, but the land securing the first note mentioned given by him was sold to one Blackwell for the sum of $3250; and that the Moodenpyle note was not collectible, but the land securing the same was sold and bought in for the estate, and sold in partition, and proceeds accounted for. Upon those findings the court gave the executors credit for the notes mentioned in lists "A" and "B;" also gave them credit for the amounts of the Carter and Moodenpyle notes, less the sums the lands securing them sold for. Those findings of the court were amply justified by the evidence, and the executors were properly credited with those various sums.

We are, therefore, of the opinion that there was no error in the action and rulings of the court in giving the executors credit for the various items mentioned in this paragraph of the opinion.

V. In March, 1905, Sarah P. Love, one of the devisees under the will, died, and the executors paid her funeral expenses out of the assets of the estate. Counsel for appellants objected to that item, but the trial court overruled the objection, and allowed the executors credit for the same. The correctness of that ruling of the court is here challenged.

We are clearly of the opinion that the court erred in so allowing credit for that item. There is no provision in the will authorizing such payment, and the other devisees were under no legal obligation to inter the deceased. The expenses thereof should have been paid out of and charged back against her distributive share of the estate.

Counsel for appellants also complain of the action of the trial court in charging the executors with only $18,250 rents, and insist that they should have been charged with $19,001, or about $750.00 more than the court charged them with. Those rents extended over a period of more than ten years, and were col-

lected from various tenants, occupying numerous pieces of property, consequently the items thereof are very numerous, and the account thereof is exceedingly long and complicated. The court with great care and patience waded through and examined this entire rent account, and heard the testimony of various witnesses who occupied the premises, touching the same; and, after a careful consideration thereof, found that the executors had performed their full duty in that regard, and had collected only $18,250. After a careful consideration of the evidence introduced, we are unable to say that the court erred in not charging the executors with a larger amount of rents.

The trial court also allowed the executors $100 which they had subscribed and paid to a railroad company for the purpose of assisting it in rebuilding a portion of its track which had washed out near Salem. Appellants objected to this allowance, and assign that ruling as error. We are unable to lend our concurrence to this ruling. The court should have disallowed this item of $100, for the reason that there is no provision in the will which authorized such payment.

Complaint is also made of the action of the court in not charging the executors with the proceeds of certain personal property, claimed to have been sold by the executors, belonging to the estate, amounting to about $2000, and also with some $800 collected by them on accounts not inventoried. The evidence regarding these two items is quite meager, and for that reason we are unable to make an intelligent ruling thereon; but the facts regarding these items can be made plainer on the next trial; and if it should turn out to be as counsel for appellants contend, then the court should charge the executors with whatever amounts the evidence may show they collected on those accounts, and have not accounted for.

The court also allowed the executors the statutory five per cent commission upon the $22,000 worth of bank-stocks distributed by them. This allowance is also objected to by counsel for appellants. This objection is untenable. Those commissions fall within the spirit of the statute fixing executors' compensation. And · besides that they inventoried the stock, took possession of it and collected the dividends thereon for years, amounting to $19,800, and paid them out to the devisees. That item was properly allowed.

It seems from the record that the court charged the executors with seven and one-half per cent interest upon all sums of money remaining in their hands from and after each annual settlement, not subsequently loaned, down to the date of the next settlement. Counsel for appellants insist that the court should have charged them with eight per cent instead of seven and one-half per cent, the highest rate that can be charged under the law. The additional one-half per cent interest, which it is claimed should be charged against the executors on the various amounts found to be due the estate on the date of each annual settlement for ten years, the period the executors had charge of the estate, amounts to $1280. Counsel for appellants insist that the respondents should be charged with this $1280 additional interest, for the reason that they could have loaned the money for the additional one-half per cent if they had exercised due diligence and foresight.

There is no pretense that the executors mingled the funds of the estate with their own, or ever used any of them in their private business, or for other profit, or ever lost or embezzled any portion of the estate, or were ever guilty of any intentional breach of trust regarding the estate. The law governing such questions is well settled in the case of Cruce v. Cruce, 81 Mo. 676. It is there stated:

"In Hollister v. Barkley, 11 N. H. 511, Chief Justice PARKER remarks: 'Such interest is allowed in equity as is just and reasonable. [New York Ch., Rule 79.] And it is just and reasonable to allow interest on all sums which are due and payable, or from the time when there should be a rest in the accounts. Annual rests may be allowed and interest cast on those rests.' I think it may safely be said, that there are a few underlying principles, with which all orders of accounting should conform as near as the circumstances of each case will permit. 1st, A trustee is accountable for all interest or profits actually received by him from the trust fund, whether used in his private business or otherwise employed by him. Under no circumstances will he be permitted to retain any benefit or advantage from the trust fund, except his compensation or commisions. 2d, He is, at all events, accountable for such interest or profits as he might have obtained by the exercise of reasonable skill and exertion in the management of the fund, whenever the character of his trust or the relation which he holds to the fund requires him to make it productive. In all such cases he is, at least, accountable for such gains and profits, although the actual gains and profits may be less."

It is evident from this record that the learned trial court had in mind those rules and attempted to follow them, and did so to the letter. There is nothing in those rules which requires the court, as a matter of law, to charge the executor with the highest rate of interest that may be charged under the law but, upon the other hand, they recognize the duty of the court to fix the rate of interest at such a rate as is reasonale and just under the facts and circumstances of each particular case. What may be reasonable and just in one case might be wholly unreasonable and unjust in another. Here, the respondents acted in good faith and made no profit out of, or used the funds of the

estate for their individual gain. Notwithstandng those facts, the court charged the respondents with seven and one-half per cent interest, the same being within one-half per cent of the highest rate which could be charged under the law. Moreover, the record shows that most, if not all, of this money was deposited in the Bank of Salem, and that almost one-half of the capital stock of which belonged to this estate; and upon that stock the estate drew large dividends aggregating about $20,000. Upon that showing, we are of the opinion that the court did not err in refusing to charge the respondents with said $1280 additional interest.

Counsel for appellants contend that on account of the misconduct of the respondents in the management of the estate, they are entitled to no commissions or compensation whatever, either as executors or as trustees, for the services they have performed for the estate.

We have, in a previous paragraph, held that respondents were not entitled to compensation as trustees, for the reason that they had neither served as such, nor earned any compensation in that capacity. But so much cannot be said of them as executors. They took charge of and administered this large estate for a period of ten years. The personal property was valued at about $70,000 when they took charge of it, and at the date of this trial it had increased, under their management, to about $145,000, less dividends. All of this required much time and labor on their part and subjected them to great responsibility. Not only that, but the trial court found that they had acted in good faith throughout the entire administration, and had been guilty of no mismanagement of the estate. We have carefully read this entire record, and we have failed to find any evidence which would have warranted the court in finding otherwise than it did in that regard. While it is true there was much

trouble, and many complications arose in the settlement of this case in the probate court, and in the trial thereof in the circuit court, yet I am satisfied that they arose chiefly on account of the unfortunate condition the executors were in and had been in for the last two or three years prior to the date of the trial. For that they should neither be punished nor penalized, but a mantle of charity and deep sympathy should be thrown around them. We, therefore, rule this contention against appellants, and hold that respondents are entitled to their regular five per cent commission prescribed by statute in such cases.

VI. It appears from this record, that on account of the unfortunate condition of the executors, all the parties to the suit, as far as they were capable of agreeing, stipulated that W. R. Judson, a son of one of the executors, might be appointed receiver of the estate, and proceed, in lieu of his father, with the trial of the cause. This agreement met with the sanction of the court, and he was appointed receiver, and the suit progresed under his management and control. It now sems that counsel for appellants object to all compensation allowed the receiver by the court for services performed by him in that capacity, as well as the fees allowed by the court to his attorney employed in the trial of the cause.

Appellants do not question the power of the court to appoint the receiver, but even if they had done so, they would not be heard to urge that objection here, for the simple reason that they invited the court to commit the error, if error it was, suggested. Nor will they be heard to question the compensation allowed him by the court for his services or the fees allowed his attorneys, "for the laborer is worthy of his hire," especially where it was through the action of appellants the receiver was appointed, and in consequence

thereof he performed the work for which the court allowed him the compensation.

It also appears from the record that the receiver collected and has disbursed, or is ready to disburse, $7700, belonging to the estate. It seems that the trial court not only allowed the receiver compensation for collecting and distributing this $7700, but it also allowed the executors five per cent commission upon the same fund. In our opinion the last mentioned allowance was erroneous, for the reason that the legal effect of the appointment of the receiver was to discharge the executors from the further actual administration of the estate; and from that time on the receiver, *de facto* at least, acted in the capacity of an administrator *de bonis non* with the will annexed.

The regular procedure would have been for the interested parties to have applied to the probate court, under section 42, Revised Statutes 1899, as amended by Laws 1902, page 92, for the revocation of the letters testamentary and for the appointment of an administrator *de bonis non* with the will annexed; and after that had been done, the cause in the circuit court should have been revived, as provided for by statute, in the name of said administrator. However, that was not done, but, by agreement of all parties, the receiver was appointed, and through that means the same result was attained; and none of them can now question the regularity of that proceeding.

If an administrator *de bonis non* had been appointed and acted as such instead of the receiver, then there could be no question but what, under the laws of this State, the administrator *de bonis non,* and not the executors, would have been entitled to the commissions upon the said $7700. That being true, then upon principles of equity and justice, it seems to me that the receiver and not the executors should receive those commissions. It would be unjust to the estate to allow commissions to both the receiver and the execu-

tors upon that $7700, for the obvious reason that but one service has been performed to the estate.

There are some other minor questions presented in briefs and argued by counsel, but we will not consider them further, for the reason that they are incidental to and are necessarily disposed of by the rulings previously announced.

We are, therefore, of the opinion that the judgment should be reversed, and the cause remanded for a new trial, in conformity to the views herein expressed.

All concur, except *Valliant, J.,* absent.