# Western National Bank v. York Silk Manufacturing Company, Appellant.

*Bailment—Pledge—Letter of credit—Bills of exchange.*

Where a banker issues a letter of credit to a manufacturer of silk, and accepts bills of exchange drawn against silk purchased by the manufacturer on the credit of the letter, and it is agreed that the banker shall retain title to the silk until the acceptances are repaid, and that the manufacturer shall have possession of the silk, to work it up, the banker may retake the silk, without losing his right to exhaust all his remedies against the manufacturer before resorting to the sale of the silk as collateral, to recoup himself.

Argued May 20, 1909. Appeal, No. 162, Jan. T., 1909, by defendant, from decree of C. P. York Co., Jan. T., 1908, No. 1, on bill in equity in case of Western National Bank, American Silk Company, C. H. Emig and Harry S. Wiest v. York Silk Manufacturing Company. Before MITCHELL, C. J., FELL, BROWN, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for a receiver.

WANNER, J., stated the facts to be as follows:

The claim of Brown Brothers & Company, is for the sum of $153,187.96 for moneys advanced, at the request of the York Silk Manufacturing Company, in the purchase of raw silk in Japan, with interest on a part thereof, and $5,000 for plaintiffs' expenses and counsel fees.

The plaintiffs, from March 12, to August 10, 1907, issued certain letters of credit, for the account of the York Silk Manufacturing Company, addressed to Japanese silk merchants, and afterward accepted and paid the drafts of the latter, covering their invoices of silk, in consideration of the defendant's agreement to provide the plaintiffs with the funds necessary to meet said acceptances, previous to the maturity of said drafts, and to pay certain commissions, and expenses.

The bills of lading were to be made out in favor of the plaintiffs, and the title and ownership of the goods were to remain vested in the plaintiffs, until such time as the defendant should pay its indebtedness to the plaintiffs in full.

Plaintiffs also had the right to sell and dispose of the goods thus pledged by the defendant, to reimburse themselves for their advances, in the event of the defendant defaulting in its payments.

Pursuant to this contract, which is contained in the letters of credit, and the agreement of the defendant attached thereto, the plaintiffs accepted drafts for silks purchased by the defendant on said letters of credit, to the amount of $211,890.77, which silks came to the plaintiffs, with invoices, and bills of lading, made out in their names. Of these silks, 193 bales of the invoice value of $133,692.63, were afterward delivered to the defendant at York, Pa. The remainder of them, viz.: 100 bales, of the invoice value of $78,198.19, remained with, and are still in the possession of, Brown Brothers & Company.

The various "Trust Receipts" under which said goods were "intrusted" to the defendant, from August 24 to October 23, 1907, provided that the defendant should hold the same in trust for the plaintiffs, as their property, substantially as specified in their former agreement. They were at liberty to sell the same on the plaintiffs' account, and to turn over the proceeds of sale to them, to be applied to the payment of said acceptances and of any other indebtedness of the defendant to Brown, Shipley & Company, or to Brown Brothers & Company.

Permission was also granted defendant to manufacture and remanufacture the silks, with the duty of identifying the prod-

uct and selling it in the same way, for the plaintiffs' benefit. In case such product could not be identified, the defendant was to keep and hold, "in trust for Brown Brothers & Company and as their property" manufactured goods of equal value, with the property originally received from the plaintiffs, and on demand to deliver up the same to them.

Brown Brothers & Company reserved the right to cancel this trust at any time, and to repossess themselves of the silk or of the manufactured product, or of the proceeds of sale of either, wherever the same might be found.

It was further stipulated that on the defendant's failure, suspension, or assignment for the benefit of creditors, or on the nonpayment at maturity of any of said acceptances, or other indebtedness of the defendant, to either Brown, Shipley & Company, or to Brown Brothers & Company, all obligations, acceptances, or other indebtedness of the defendant to them should at once become due and payable.

The defendant being in default, the plaintiffs petitioned the court for a return of the goods, in the receiver's hands, alleging title thereto, under said agreement and trust receipts. The receivers assenting thereto, the court, on May 5, 1908, ordered the return of seventy-five bales of raw silk, of the market value of $35,934.30. At the same time, by authority of the court, the receivers paid to the plaintiffs the sum of $31,900.75 for certain partly manufactured goods which they retained. But other silks, of the value of $34,277.29, which had also been received from the plaintiffs, by the defendant, have never been returned. The defendant's indebtedness for these being admitted, it was afterward paid by the receivers under an order of the court. But defendant denies all liability for moneys advanced by plaintiffs on any of the goods returned to them.

The court entered a decree in favor of the plaintiffs.

*Error assigned* was the decree of the court.

*J. S. Black,* with him *V. K. Keesey,* for appellant.—There is no question raised as to the ownership of the silk. Admittedly

it has from the beginning been the property of the appellee, and in addition this court, construing a like trust receipt, has held that it constitutes a bailment merely: Brown v. Billington, 163 Pa. 76.

Where goods are delivered under a contract of bailment with the privilege to the bailee to buy the goods at a certain price, if the contract is canceled and the goods retaken by the bailor, all evidences of indebtedness from the bailee to the bailor, whatever their form, on account of the price of the goods, are canceled with the contract: Seanor et al. v. McLaughlin, 165 Pa. 150; Campbell Printing Press, etc., Co. v. Hickok, 140 Pa. 290; Scott v. Hough, 151 Pa. 630.

The law will tolerate no such absurdity as the seizure of goods by one claiming them as his own, and an action at the same time by the same person for the price of those goods as if purchased by and belonging to another: Ketcham v. Davis, 31 Pa. Superior Ct. 583; Wheeling v. Phillips, 10 Pa. Superior Ct. 634; North & Co. v. Yorke, 6 Pa. Superior Ct. 354; Jacob v. Groff, 19 Pa. Superior Ct. 144; Durr v. Replogle, 167 Pa. 347; Wotring v. Shoemaker, 102 Pa. 496; Semple v. R. R. Co., 172 Pa. 369.

*John G. Johnson,* with him *George S. Schmidt* and *Henry C. Niles,* for appellees.—In Pennsylvania it has been held that a contract providing for the furnishing by a banker of money for the purchase of property, keeping the title evidences thereof and delivering the property to the party at whose request the money was furnished, taking from him a trust receipt wherein it was agreed to hold as property of the banker, with power to sell and deliver proceeds to the banker for the credit of the borrower and bailee, is valid: Brown v. Billington, 163 Pa. 76; Bank v. Baum, 187 Pa. 48; Keystone Watch Case Co. v. Fourth St. Nat. Bank, 194 Pa. 535.

Under similar circumstances a lending bailor may recover the goods from the assigned estate of the borrowing bailee upon proper identification: Farrell's Est., 17 Pa. Superior Ct. 240; Thompson's App., 22 Pa. 16; Smith v. Moors & Co., 215 Pa. 421; Moors v. Jagode, 195 Pa. 163.

OPINION BY MR. JUSTICE ELKIN, June 22, 1909:

Nothing more could be said, or better said, than has been said by the learned counsel for appellant to sustain the position taken in the court below and here on the questions involved. This position is very frankly stated to be "that by the terms of this contract no credit was authorized to be given to appellant. Silk was purchased for the appellees through the agency of the appellant and paid for by means of drafts drawn by the merchant upon the appellees. The silk so purchased immediately became the property of the appellees, and was never at any time the property of the appellant. The agreement provides for a bailment of the silk bought for the appellees to the appellant, and contemplated ultimately a sale of that silk to the appellant." If this were a proper understanding of the contractual relations existing between the parties and a correct interpretation of the covenants entered into by them, there would be great force in the argument. But to place such a construction upon the contract, our eyes must be closed to the situation of the parties, the scope and character of their business relations, the nature of their transactions, and to the manifest intention of the contracting companies. Such a view of the case ignores the purpose for which the contract was made and places the contracting parties in a relation not intended by either of them. The intervening petitioners, the appellees here, are bankers, while the defendant company, the appellant, is a manufacturer of silk fabrics. The bankers receive moneys on deposit, discount commercial paper, negotiate loans, issue letters of credit and do a general banking business. The appellant company manufactures and sells silk products and for these purposes purchases silk materials in foreign markets. In the transaction of its business it became necessary to establish a credit and this was done through the banking company by means of a letter of credit issued to appellant upon such terms and conditions as were deemed ample to protect the bankers for moneys advanced from time to time to pay acceptances. It was clearly within the power of the contracting parties to make whatever contract they chose to make for this purpose so long as the terms thereof

were not unlawful or against public policy, and no such ques-
tions arise here. The bankers were not engaged in the silk
business and did not need silk materials, the appellant was in
that business and did need the silk. This was the situation of
the parties when the bankers agreed to extend their credit
and appellant agreed that the title, possession and right of
possession, of the materials purchased and for which bills of
exchange might be drawn, should be and remain in the bankers
until the indebtedness of appellant thus created shall have
been paid. It certainly cannot be said, under these circum-
stances, that "no credit was authorized to be given appellant;"
or, that the "silk was purchased for the appellee through the
agency of appellant;" or, that the parties only had in contem-
plation a purchase of the silk by the bankers in the first in-
stance and the sale of it to appellant in the second place. To
so hold would be to reverse the natural order of the business
relations existing between the parties, and would make the
bankers who issued the letter of credit and paid the accep-
tances of bills drawn against that credit, dealers in merchan-
dise, while the manufacturing company, at whose instance the
credit was extended, and for whose use the silk was purchased,
would simply enjoy the privilege of buying silk from the
bankers from time to time as its necessities might require. No
such thing was ever contemplated by the parties, and it is
not necessary that the writings evidencing their contract
should be given such a strained and unreasonable interpreta-
tion. In such transactions the intention of the parties is the
guide to correct interpretation, and when viewed in this light,
it is perfectly clear that the silk materials were purchased by
appellant for its own use and that the title, possession and
right of possession only passed to the bankers as security for
the acceptances paid upon bills of exchange drawn against
the credit given. The letter of credit was issued to the silk
company and was intended for its benefit. The acceptances
paid by the bankers from time to time on account of bills
drawn against the credit given created an indebtedness against
appellant, which it was bound to pay according to the terms
of the contract. The silk was held in the nature of a collateral

security for the moneys thus advanced. With this view of the situation there is but little difficulty in arriving at a proper solution of the questions raised by this appeal. We fully concur in the. views expressed by the learned court below in disposing of the questions presented there and argued here. The appellant had the right to enter into the contract and is bound by its terms. It was distinctly provided therein that the bankers might at their discretion, sell any or all of the silk, and that the proceeds thus derived should be applied on account of the indebtedness. It was further provided, and this was evidently done in aid of the silk company, that the silk, the title to which was held by the bankers as a security, might be intrusted to appellant for manufacturing purposes upon a contract of bailment, but the right to retake the silk at the discretion of the bankers was expressly reserved. In the present case this is what was done, all of which was in accordance with the terms of the contract and we think this is an end of the case.

Decree affirmed at the cost of appellant.