JOHN DI IORIO, Admr., *vs.* ANNIE CANTONE, *et al.*

MARCH 15, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS. J. Annunziata Bianco, an elderly and illiterate woman, died November 11, 1923. The Superior Court, sitting without a jury, disallowed three items in the final account of the administrator of her estate. To such disallowance he is here on exceptions.

The items disallowed were credits claimed in connection with the payment of a note for $650 executed by decedent to

one Corrente and secured by mortgage on her only parcel of real estate and on another parcel standing in her name but beneficially owned by her son-in-law, John W. Gugliucci. The mortgage was in substitution for an earlier one covering the Gugliucci real estate only and was given because the mortgagee regarded the Gugliucci security as inadequate. Both mortgages were placed at the instance of Mrs. Gugliucci. The money borrowed was used solely to retain an attorney for Gugliucci, who was under arrest.

Two months after Mrs. Bianco's death Mrs. Gugliucci, as her husband's agent, paid with his check the mortgage note then overdue and, pursuant to his instructions, took from Corrente a transfer of the mortgage to Gugliucci instead of a discharge. Gugliucci, for some unexplained reason, kept outside the State of Rhode Island. He wrote to the administrator demanding payment of the note but neither he nor anyone else ever filed a claim therefor in the Probate Court as provided for in G. L. 1923, Ch. 365, Sec. 3 (5496).

The personal estate of Mrs. Bianco was nominal. Her debts and funeral expenses were represented to be about $1,500. This amount included the mortgage note. The Probate Court gave leave to the administrator to sell the mortgaged real estate in order to pay debts. G. L. 1923, Ch. 359, Sec. 1 (5338). The petition and order of sale is not in evidence. The administrator in his final account charged himself as follows: "Received from the sale of real estate, one-half of the equity, after payment of the mortgage, for property on the southerly side of Cedar Street, Providence, in which the deceased has one-half undivided interest $1,978.72." He credited himself "payment of mortgage note to John W. Gugliucci $650." It is apparent from the evidence that the amount for which the administrator charged himself was not for her equity "after payment of the mortgage" but for Mrs. Bianco's interest in the real estate as if unencumbered.

Mrs. Bianco's heirs, consisting of several children in addition to Mrs. Gugliucci, learned before the administrator's sale that he was considering payment of this note to Gugliucci. They gave him notice that, while they conceded the mortgage note in the hands of Corrente could have been collected from Mrs. Bianco, they asserted that when it was paid by and transferred to Gigliucci, for whose sole benefit it was given and whose property was partly held as security therefor, the note could not be enforced by Gugliucci against Mrs. Bianco's estate. They protested to the administrator against its payment. Acting under advice of his personal attorney, now deceased, and contrary to the caution of his attorney of record in the Probate Court, he disregarded the protests and telephoned Gugliucci in New York City. Gugliucci told him he would accept nothing but cash for the note, paid to him in New York City. The administrator went there, paid the note, returned to Rhode Island, sold Mrs. Bianco's real estate and executed a deed thereof free from encumbrances.

The sale of the real estate to pay intestate's debts exclusive of the mortgage was clearly necessary. The evidence shows no recital of the mortgage in the petition to sell but even if such petition had recited the mortgage debt to be one among others owing by deceased, the order of sale would not be a judicial determination of the liability of the estate therefor. The order merely established the necessity for a sale to pay debts and this was apparent apart from the $650 note. *Re Wells*, 7 Calif. App. 515.

From the proceeds of the administrator's sale of realty to pay debts any surplus not required therefor belonged to the heirs. G. L. 1923, Ch. 359, Sec. 10. (5347). They, therefore, had a vital interest in the allowance or payment of alleged debts of Mrs. Bianco's estate. The administrator after payment of this note claimed to stand in as good a position as Gugliucci and that production of the note and proof that Gugliucci paid it required the allowance of the item on final account unless the heirs established the exist-

ence of equities to defeat it. This he asserts they failed to do. Mrs. Gugliucci was not produced.

We do not think that the administrator after payment stood in the same position as Gugliucci. Though succeeding to Gugliucci's rights, he was subject to certain duties, among them being the exercise of due care in protecting the estate against questionable claims. He could not voluntarily pay an unfiled claim and escape this duty or transfer it to others.

The holder of a note secured by real estate mortgage may after the maker's death proceed against the security or file his claim as a general creditor of the estate. See cases 24 C. J. 276. If he adopts the latter course his claim must be filed like that of any general creditor. *Re Brackey*, 166 Iowa, 109; 24 C. J. 334, n. 73. The note never having been filed Gugliucci had no standing as a general creditor. If payment is to be justified it must be because of some legal or equitable duty imposed upon the administrator apart from statute.

In Rhode Island as between the realty and personalty of an intestate, if the former be mortgaged to secure a note of decedent, the note must be paid from the latter if sufficient. *Re Hunt*, 19 R. I. 139. Such was the course adopted on an unfiled mortgage note and on final account approved in *Beard's Appeal*, 78 Conn. 481. Likewise in *Re Brackey*, *supra*, payment of an unfiled mortgage note was proper because the court on petition of devisee ordered the administrator to pay it out of the personalty. See also *Judson* v. *Bennett*, 233 Mo. 607, at 646-7. These payments were supported because of the duty imposed by law upon the administrator to exonerate the realty where there was sufficient personalty. Here there was no personalty. In the cases cited also, apart from failure to file the claim, there was no doubt about the holder's right to collect. In the case at bar there was a denial of such right in Gugliucci. It was the administrator's duty to set up any equities or counterclaims which Mrs. Bianco reasonably might make against

Gugliucci. *Re Brackey, supra.* The administrator's contention that he did not consider himself warranted in wasting the estate by contesting Gugliucci's right to collect is peculiarly inept in view of the fact 'that it was the heirs' money which would be wasted and their wish that it be done. The administrator giving no-heed to the heirs could not make payment relying merely on the unquestioned right of Corrente to collect and assuming that Gugliucci as transferee had the same right. The administrator had no duty to pay the note as an exoneration of real estate.

It is next urged that the payment was one incidental to administration which the administrator was forced to, or at least in the exercise of good business judgment did pay in order to make the authorized sale of decedent's interest in the real estate. Cf. *Houghteling* v. *Stockbridge*, 136 Mich. 544. (redemption of bonds). It is pointed out that he agreed to sell this interest free from encumbrances. Assuming, though it does not appear that he had authority to so sell, the evidence is that arrangements could have been made by which the title would have been guaranteed to the purchaser without payment of the note to Gugliucci and the question of Gugliucci's right to collect would have been left for subsequent judicial determination. The most that may be said for the administrator is that he proceeded in a summary manner and against the protests of those whose money was being spent because he was told. that he had the right to do so. Summary determination by an administrator of rights where all interested parties are not protected is undesirable. *Mathewson and Arnold* v. *Petrs*, 12 R. I. 145.

It is also urged that since the attorneys for the heirs participated in, and one of them drew up the administrator's agreement to sell free from encumbrances, the heirs are now estopped to question the payment of the mortgage note. It was the same attorneys however who gave notice to the administrator before the payment not to pay Gugliucci and announced that if he did so they would object. Moreover, some of the heirs appear to have been minors whose right

could not be relinquished by their attorney's agreement. *Abbott* v. *R. I. Hos. Trs. Co.*, 49 R. I. 87. Still less could their attorney's actions operate to estop them from claiming such right.

One further contention to support the payment is that regardless of the terms of the administrator's authorization to sell he actually paid the note prior to the sale believing that he had a right to do so; that he then sold the real estate free from the mortgage and had in his hands a fund against which the holder of the note equitably might assert a claim and that after making payment of the note the administrator was entitled to reimburse himself; that instead of reimbursing himself without the approval of the court he included in his final account both receipt and disbursement of an amount sufficient to pay the mortgage note and that the court was not justified in passing upon his payment adversely. Inasmuch as the sale price came into the administrator's hands in his representative capacity, we can not say that it was improper to include it in his account. *Jennison* v. *Hapgood*, 10 Pick. 77; *Harris* v. *Ingalls*, 74 N. H. 35. Having personally paid the claim he was entitled as against this sale price to credit in his final account for a legal disbursement from the fund. *Richardson* v. *Merrill*, 32 Vt. 27; *Millard* v. *Harris*, 119 Ill. 185; *Re McKinnon*, 182 App. Div. 377; 24 C. J. 441. Payment to Gugliucci made in good faith and with reasonable prudence might be such an one. *Kee v. Kee*, 43 Va. 117, *Coffee* v. *Ruffin*, 44 Tenn. 487; 24 C. J. 450, n. 9. The duty of establishing good faith and reasonable care rested upon the administrator. There was no evidence of investigation in spite of the obvious inference that the debt was owed by Gugliucci. The payment was made at the administrator's peril. 24 C. J. 449, n. 5. The Superior Court found that he acted in the belief that he had the right to make the payment. This alone was not sufficient. *Carney* v. *Hawkins*, 34 R. I. 297. He needed further to establish that in making the payment he was acting with due care. This

was not established.   The Superior Court said:   "It seems to the Court from all this evidence and the state of the record and the purpose for which this note was taken and the fact that it came into the hands of the person for whose benefit it was made—is a fairly successful defense in the nature of an equitable defense.   .   .   ."   A careful study of the record warrants this conclusion.   The clear inference from the testimony is that Mrs. Bianco was merely lending her credit to secure a loan for Gugliucci and that the debt was his.   The administrator failed to establish that the payment was made with due care.   *Newsom* v. *Newsom,* 3 Ired. Eq. 411 (debt improperly paid as against heirs).

All exceptions of the administrator are overruled and the cause is remitted to the Superior Court for further proceedings following the decision.

*Malcolm D. Champlin,* for appellant.

*Uldrich Pettine,* for appellees.