GRAHAME AND RICHARD D. WOOD, EXECUTORS OF THE ESTATE OF GEORGE WOOD, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41211. Promulgated June 29, 1932.

*Robert T. McCracken, Esq.,* and *John B. Perry, C. P. A.,* for the petitioners.

*Frank T. Horner, Esq.,* for the respondent.

OPINION.

ARUNDELL: Section 303 (a) (1) of the 1924 Act, which is the applicable taxing statute, provides that in determining the value of the net estate there shall be allowed as a deduction from the value of the gross estate such amounts for "claims against the estate" to the extent that they "were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * * as are allowed by the laws of the jurisdiction * * *." Our first consideration then is to determine whether the sum of $381,813.77 sought to be deducted constitutes "claims against the estate." The items making up the indebtedness consisted of amounts loaned to the decedent by banks and the Millville Manufacturing Company and

the Mays Landing Water Power Company, for the payment of which he was personally liable. On this statement it would appear that the deductions sought were clearly allowable.

The respondent urges, however, that the trust, the pertinent provisions of which are set forth in our findings of fact, had been impressed with the obligation of paying the debts and that the collateral should have been used to satisfy the liabilities. In creating the trust, provision was made for the liquidation of the debts from income earned by the corpus of the trust. The bank loans were to be paid off first and then the debts owed the corporations. Provision was also made for reimbursing decedent's estate from the same source in case it paid all or any part of the obligations. None of the creditors of the decedent were parties to the trust instrument and there is no evidence of an agreement on the part of any of them to look to the trust for payment. Nothing appears contrary to the fact that the decedent's primary liability for the debts continued until his death. Had he made provision in the declaration of trust for the payment of the debts by the trust alone, unless the arrangement was agreed to by his creditors, his primary liability for the obligations would nevertheless have continued.

In paying the claims the executors were liquidating liabilities that could have been enforced against the decedent during his life, and they being obligations for which he was primarily liable at the time of his death, the estate was not subrogated to the rights of the banks against the collateral. *Grand Council Royal Arcanum* v. *Cornelius*, 198 Pa. St. 46; 47 Atl. 1124; *Underwood* v. *Metropolitan National Bank*, 144 U. S. 669; *Fox* v. *Dunning*, 124 Okla. 228; 255 Pac. 582. The decedent's interests in these shares passed with his transfer of them to the trust, and the latter became their owner subject only to such rights as the bank had pending the liquidation of the indebtedness.

So far as the record discloses the agreements entered into with the banks for the loans did not confine their right of recovery to the value of the stock deposited as security. In the absence of such an agreement, a creditor holding security for his claim may, in case of default, proceed against the debtor personally in preference to the security, *Western National Bank* v. *York Silk Mfg. Co.*, 225 Pa. 442; 74 Atl. 244; *Ketcham* v. *Provost*, 141 N. Y. S. 437; *State National Bank of Denison* v. *Syndicate Co.*, 178 Fed. 359, and after the debtor's death he may file a claim as a general creditor of the estate. 24 C. J. 276; *In re Tubbs' Estate*, 161 Pa. St. 252; 28 Atl. 1109; *Di Iorio* v. *Cantore*, 49 R. I. 137; 140 Atl. 913. The debts owing the Manufacturing Company and Power Company were unsecured and as to them the creditors had no election of remedies.

The debts were claims against the estate within the meaning of the statute and are deductible from the value of the gross estate.

The case of *Estate of Kennedy*, 4 B. T. A. 330, is not controlling. There, the contracts under which the loans were made provided that in making settlement under the life insurance policies, any indebtedness to the company respecting them would be deducted from the amounts payable to the beneficiaries. Here, there has been no showing that the banks ever agreed to look to the value of the collateral alone for payment.

The parties are in agreement that the claim of the estate against the trust, created by the payment of the decedent's indebtedness to the banks and corporations, should be included in the gross estate at some value. The petitioners are asking us to confirm their valuation of $38,181.38, as returned, and the respondent insists that the evidence establishes no value less than the face amount of $381,813.77, the valuation determined by him.

The provisions of the declaration of trust clearly show an intention that the debts, whether paid to the original creditors or the estate, should be paid from income alone, without resorting to the principal. We find no reason to question the limitations thus placed upon the collection of the claim. The decedent was dealing with his own property and could have forgiven the trust of any liability to reimburse his estate, as he did in the case of payments made by him prior to his death. By requiring the trustees to repay his executors out of income from the corpus, he gave his estate the benefit of whatever value such a claim would have at the time of his death.

The uncontradicted testimony of five of petitioners' witnesses fully supports their claim. The petitioners, who have been identified with the two corporations for many years as officers, testified that a payment of dividends in and after 1926 would have seriously affected the future of the corporations, due to insufficient current earnings and the necessity of maintaining at all times large reserves of capital to meet market conditions in the industry and obsolescence of machinery resulting from new inventions. They further testified that they have never been interested in acquiring the stock of the trust at the prices at which it was offered to them, and because of the state of the cotton textile industry since the decedent's death there has been no market for the stock as an entirety at substantial prices. The liquidating value of textile mills, they testified, was very small in 1926 and since has decreased to practically nothing.

Their opinions are confirmed by the testimony of Charles H. Pope, a large cotton broker, with intimate knowledge of the financial affairs of corporations engaged in the textile business before and after 1926, a bank director and president of the Penn Mutual Life Insur-

ance Company, and the president of the bank with which the corporations had accounts and transacted business. The two latter witnesses placed a valuation on the claim at the basic date of not in excess of 10 per cent of its face amount. The opinions of these witnesses convince us that the claim in question had a value for estate-tax purposes of $38,181.38, and we have so found as a fact.

Under the agreement creating the partnership of George Wood, Sons & Company it is provided that in case any partner shall die before the termination of the firm the deceased partner's interest and share in the profits shall continue to the end of the partnership term or his executors may elect to withdraw his capital contribution. The petitioners decided to pursue the former course, with the result that they received at the close of 1926 the share of firm profits the deceased would have received had he survived the life of the partnership.

The parties have stipulated the issue to be whether the " right to share in the profits of the partnership * * * constitutes an asset of the estate subject to the Federal estate tax." Without objection, the proceedings were submitted by the respondent, with the understanding that if the right to participate in future profits of the partnership is taxable as a part of the gross estate, the figure to be used is the stipulated present worth of $91,876.36. Such appears to have been the purpose of the stipulation and the case will be decided on the theory that the parties are in agreement as to the value of the right at the time of decedent's death.

In the case of *William P. Blodget et al.*, 13 B. T. A. 1243, we had the question of whether the taxpayers were liable for income tax on such portions of the earnings of a partnership as were included in the value of the gross estate. The fair market value of the right of the estate of the decedent to profits of the partnership was stipulated to be $49,346.15 as of the date of the decedent's death. In holding that only the profits received by the estate in excess of this figure were taxable income to the beneficiaries of the estate as gain, we remarked that the right of the estate to future partnership earnings " was a valuable contractual right or chose in action constituting a part of the assets of William Blodget which passed on his death to the executors of his estate." The same conclusion was reached in *John F. Degener, Jr.*, 26 B. T. A. 185.

In the case of *Ernest M. Bull, Executor*, 7 B. T. A. 993, there was no proof of the value of the right to future profits of the partnership and all of the earnings were held to be taxable to the estate as income.

The holding of the court in *United States* v. *Carter*, 19 Fed. (2d) 121, is to the same effect. There, the Government sought to impose an income tax on the difference between the estimated amount at

which a right similar to the one here was returned for estate-tax purposes and the amount subsequently received. In deciding that the excess amount did not represent a profit or gain on the right, taxable as income to the estate, the court pointed out that the amount received by the executors from that source " came to them as part of the corpus of the estate of the deceased," and that the item " was an integral part of the corpus of the estate, received and retained by the executors, not a gain or profit issuing and severed from a capital asset."

We think these cases control the question and accordingly decide the issue in favor of the respondent.

*Decision will be entered under Rule 50.*