Estate of Frederick C. Hodgdon, Deceased, the New York Trust Company, One of the Executors of Said Estate v. Commissioner.
Estate of Frederick C. Hodgdon v. Commissioner
Docket No. 33828.
United States Tax Court
1952 Tax Ct. Memo LEXIS 104; 11 T.C.M. (CCH) 898; T.C.M. (RIA) 52259; August 25, 1952
*104 William A. Pallme, Esq., 52 William St., New York, N. Y., for the petitioner. Robert J. McDonough, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner seeks redetermination of a deficiency in estate tax of $8,817.74. Certain issues have been settled between the parties. The issues remaining are: (1) Whether certain household furniture and silverware is properly includible in decedent's gross estate; (2) whether a claimed deduction for support of decedent's widow is allowablein full under section 812 (b) (5); and (3) what amount of indebtedness under a certain future employment contract is properly allowable as a deduction from gross estate, and, in the alternative, if petitioner is entitled to more of a deduction than allowed by respondent, whether there is a corresponding asset, the right to services, which is includible in the gross estate. Some of the facts are stipulated. Findings of Fact The stipulated facts are hereby found. [1]
*105 Petitioner filed the estate tax return with the collector of internal revenue for the second district of New York. I. - Frederick C. Hodgdon, who died on November 16, 1946, and is hereinafter referred to as decedent, bequeathed all of his tangible personal property to his wife, who survived him. In the event of her prior death his will had provided for a bequest of certain specified articles of furniture and silverware "if I be the owner thereof at the time of my death" to the trustees of Tufts College. The articles thus enumerated are the subject of the first controversy. They were used in the Hodgdon household, and were purchased between 1931 and 1939 under bills or invoices directed to decedent. While decedent was still alive, his wife offered some of the silverware to a third person as a gift. The articles of furniture and silverware in controversy were the property of decedent at the time of his death. II. - Respondent in his notice of deficiency reduced to $300 a claimed deduction for support of decedent's widow under section 812 (b) (5) in order "to reflect the maximum amount allowable under the laws of the State of New York." The petition alleged that respondent "erred *106 in disallowing so much of the expenses for the support of Decedent's widow for the period immediately subsequent to Decedent's death as was in excess of the sum of "$300.00." In outlining the facts upon which he was relying, petitioner stated: "The issue * * * is one of New York law. The report is apparently based on the assumption that Section 200 of the Surrogate's Court Act applies but it is submitted that in this situation Section 204 of the Real Property Law bearing the title 'Widows Quarantine' is applicable * * *." In his answer respondent denied the allegation of error. Decedent was the owner of the Hodgdon residence at the time of his death; after his death his widow was endowed in the residential premises, and was entitled to support and maintenance during quarantine. III. - In the latter part of 1945, decedent's wife, who was then 81 years old, had been ill with a heart condition for some years; her memory was failing and she was no longer able to manager their household. Decedent, who was then 72 and also in poor health, desired to have someone take charge of the household and remain there at night. As this could not be immediately accomplished because all the other *107 apartments in the building were occupied, decedent, who owned the building, started proceedings in February 1946 to get a certificate of eviction from the O.P.A. for one of the apartments. The certificate, obtained after a hearing, authorized decedent to pursue eviction remedies, but not before September 1946. In the meantime, during the summer of 1946, it was necessary for a friend to come to the house four or five days a week to arrange for the marketing and to give instructions to the servants. In July 1946 decedent attempted to persuade Miss Winifred Cushing, a distant relative in her early fifties, to give up her lifetime position as dietitian in the Paterson (N.J.) General Hospital in order to come and live with them as a companion. At his time, Miss Cushing was employed with reasonable expectancy of continuing her position at a salary of not less than $225 a month plus room and board, and she had for a number of years past been setting aside a portion of her earnings in an annuity policy and other types of investments in order to build up a fund which would enable her to retire at age 60. An agreement was drafted, was reviewed by Miss Cushing's counsel and was signed by *108 both parties on September 20, 1946. It provided that Miss Cushing would resign her position at the hospital and enter decedent's employ within a month after signing the agreement. She was to plan meals, supervise the household and act as companion to the Hodgdons for the remainder of their lives or until Miss Cushing reached age 60. The compensation agreed upon was $300 per month, plus a private room and bath or, in lieu thereof, an additional $75 per month. In the event that both decedent and his wife died before Miss Cushing reached age 60, Miss Cushing was to perform the same duties in the residence where they lived at the time of death for as long as the executors desired. In the event there were no such duties to be performed she was to receive the compensation above specified until she reached age 60 or, in lieu thereof, "a sum equal to the value of an annuity of $375.00 per month for the period from the date of said payment to the day on which Miss Cushing reaches the age of 60 years computed upon a four per cent interest basis." The agreement further provided that if at any time before the death of decedent and his wife Miss Cushing voluntarily resigned or left the employment, *109 decedent would be released from any further obligation to pay salary, but would have to pay $75 per month (representing the amount which Miss Cushing had prior to the date of the agreement set aside for the purposes of investment in annuities effective at age 60) until Miss Cushing reached age 60 or, in lieu thereof, pay any or all of said annuity policies so that they should be fully prepaid and effective at age 60. In the event that Miss Cushing's services should cease to be rendered by reason of disability, the desire of decedent and his wife to dispense with her services, or any other cause not due to her own act or fault, decedent agreed to indemnify Miss Cushing until she reached age 60 against any loss which she might suffer by reason of such termination of employment. Said indemnity, however, was not to exceed $375 a month or, in lieu thereof, the value of an annuity in that amount at the rate of 4 percent per annum, from the date of termination of the employment until Miss Cushing reached age 60. Against the maximum amount of such indemnity, decedent or his executors might set off "any sums which Miss Cushing may be entitled to receive because of disability either as a claim *110 against persons responsible for the disability or as an insured under disability policies and any other sums which Miss Cushing may be entitled to receive as allowances or income on investments during the period before she reaches age 60, but may not set off the principal amount of any legacies or bequests received by Miss Cushing from any person or persons whomsoever or any sum which Miss Cushing may receive as salary or compensation from other employment during said period." The agreement goes on to say that the parties are of the opinion that: "* * * any employment which Miss Cushing may obtain at her present age other than her employment as the Chief Dietician of the Paterson General Hospital and her employment under the terms of this Agreement would be * * * fortuitous and due to circumstances which cannot normally be contemplated at this time and that therefore the compensation which Miss Cushing may receive through such employment is under no conditions to be offset against the payments or indemnities specified hereunder." The contract was an arms-length transaction and established a business relationship. The services to be rendered by Miss Cushing were thought by decedent *111 to be and were in fact reasonably worth the payments called for by the agreement. The agreement was entered into for adequate and full consideration in money or money's worth. The obligation of decedent or his estate to pay Miss Cushing $375 or its equivalent each month until Miss Cushing reached age 60 was absolute and subject to defeasance only by a voluntary act of Miss Cushing, and not be an act of the obligor under the contract. Miss Cushing started work at decedent's household in October 1946 and, although decedent died the following month, she has continued to work there and to act as companion to decedent's wife down through the date of the hearing in 1952. During this time, she has been paid by the estate the amount set forth in the contract. In the estate tax return a deduction was claimed for the commuted value of $375 a month from the date of decedent's death to the date when Miss Cushing became 60. Respondent disallowed this deduction, but allowed one based on a payment of $75 a month, which amount was payable even if Miss Cushing voluntarily resigned. At the date of decedent's death his wife was 82 years, 5 months, and 15 days old, and Winifred Cushing was 52 *112 years, 5 months, and 20 days of age. Opinion I. - On the first issue, petitioner has failed to sustain its burden of proving that the furniture and household effects were not the property of decedent and should hence be excluded from the estate. Our finding of fact, made accordingly, is dispositive of the issue. Petitioner educes no authority to support any such presumption as that in such circumstances the wife and not the husband is the owner. At best, the common practice, we suspect, would be closer to a tenancy by the entirety, which on these facts would be of no help to petitioner. Indeed, the evidence here seems actually to support respondent. Decedent obviously regarded himself as owner, as he disposed of the property in his will. It is stipulated that his funds paid the purchase price. Such meager evidence as was introduced falls far short of balacing these factors, Frances Plumer McIlhenny, et al., Executors, 22 B.T.A. 1093, 1101, to say nothing of overcoming the presumption of correctness of respondent's action. On this point the deficiency is sustained. II. - Notwithstanding that the second issue was presented as "a question of law" and no factual dispute *113 was raised at the hearing, respondent now relies primarily on burden of proof and makes no extended legal argument. We view this position as untenable at so late a date. Although the amounts are small, a brief statement of respondent's present position will serve to demonstrate its error. Petitioner originally claimed $760.56 as a deduction for support of the widow during administration. This was decreased in the deficiency notice to $300 "to reflect the maximum amount allowable under the laws of the State of New York." Respondent on brief now says the claimed deduction "is not allowable in the amount of $760.56 or any lesser amount." (Italics added.) And if we were to sustain his argument that in this state of the record petitioner had to prove that the payment in question was "reasonably required" and "actually expended," we see no escape from going all the way with respondent and disallowing even the $300 as to which the deficiency notice raised no question. Respondent's position offends too flagrantly the principle that a taxpayer must be given a decent opportunity to know and prepare *114 for factual issues to be sustained here. Sangston Hettler, 16 T.C. 528, 535; Warner G. Baird, 42 B.T.A. 970; see Wentworth Manufacturing Co., 6 T.C. 1206. The legal question may well be treated as now abandoned by respondent. In any event, it suffices to say that he makes no effort to meet petitioner's contention that the widow's quarantine [2] is additional to, and not limited by the $300 support provision of the New York Surrogate's Court Act. [3] There being apparently no such legal limitation as respondent originally relied upon, [4] we regard his action as erroneous in this respect. *115 III. - The principal question involves an obligation for a term of years undertaken by decedent to make certain payments to a distant relative for acting as housekeeper for himself and his wife. That there was full and adequate consideration in the duties to be performed and the sacrifices to be made by the obligee we have no doubt. The sum agreed upon was certainly not excessive, [5] and while contingencies could occur which would reduce the stipulated payments, these were not greater than those inherent in any long-term employment contract, and none had occurred when decedent died. We conclude that the claim was properly deductible in full. See William Weiser, Executor, 39 B.T.A. 1144, 1146, affirmed (C.A. 10), 113 Fed. (2d) 486; Robert A. Taft, Executor, 33 B.T.A. 671, 680, affirmed (other issue) (C.A. 6), 92 Fed. (2d) 667. Respondent's alternative contention, raised for the first time by amended *116 answer, may well be sound. The services decedent's widow, and later his estate, would have the right to command may well have had some value. See Grahame Wood, et al., Executors, 26 B.T.A. 533, 539. We see no reason why this could not form a taxable transfer and as such be subject to inclusion like any other article of value, including trusts and contracts. See City Bank Farmers Trust Co., Trustee, 12 T.C. 242; Helvering v. Mercantile-Commerce Bank & Trust Co. (C.A. 8), 111 Fed. (2d) 224. The difficulty is that respondent, upon whom the burden rested, wholly failed to show what worth, if any, the contract had at decedent's death. See Robinette v. Helvering, 318 U.S. 184. And this becomes of peculiar importance in view of the valuation provisions of the Technical Changes Act. See Higgs' Estate v. Commissioner (C.A. 3), 184 Fed. (2d) 427; Pruyn's Estate v. Commissioner (C.A. 2), 184 Fed. (2d) 971. On this phase of the case we must conclude that respondent's burden has not been borne, and that petitioner's position must be sustained. Decision will be entered under Rule 50. Footnotes
1. There is a discrepancy in the stipulation. Paragraph 8 states: "Winifred Cushing was born on May 26, 1894 and was therefore 53 years, 5 months and 20 days of age on November 16, 1946, the date of decedent's death." If she was born in 1894, she would be 52, not 53, in 1946.↩
2. New York Real Property Law, section 204↩. 3. Surrogate's Court Act, section 200↩.
4. "These two enactments, respecting the widow's exemptions and her quarantine rights, have existed side by side for upwards of twenty years, and whereas in certain cases they may give parallel and overlapping rights, it is not within the province of the Court to decide that either is rendered nugatory by reason of the presence of the other." Matter of McClellan, 235 N. Y. Supp. 690, 134 Misc. 166↩.
5. We have found as a fact at respondent's request that Miss Cushing's services were worth the payments called for by the agreement.↩